Argued May 3, decided June 8, 1909.

**STATE *v*. MINNICK.**

[102 Pac. 605.]

INDICTMENT AND INFORMATION—SUFFICIENCY—MODE OF OBJECTION—EFFECT.

1. Where the objection to an indictment for larceny is that it does not state facts constituting a crime, but no demurrer or motion to set aside the indictment was made, if, taking the indictment as a whole, the essential elements constituting the offense of larceny can be found in it, the objection must be overruled.

LARCENY—INDICTMENT AND INFORMATION—SUFFICIENCY.

2. Under Section 1303, B. & C. Comp., providing that an indictment is definite enough if the facts are so stated as to enable a person of common understanding to know what is intended, an indictment charging that defendant "took, carried, stole, led and drove away," two heifers of the value of $30, contrary to the statutes, is sufficient to charge simple larceny without the allegation that the taking was felonious.

LARCENY—INDICTMENT—GRAND OR SIMPLE LARCENY.

3. Under Section 1801, B. & C. Comp., relating to grand larceny, and providing that any person committing the crime of larceny by stealing any "cow or calf" shall be punished, an indictment alleging that defendant took, carried, stole, led, and drove away, two heifers of the value of $30, charges petty and not grand larceny, since the word "feloniously" is not used; "heifer" is not mentioned in the statute, and it is unnecessary, in order to charge grand larceny, to allege the value of the animal.

LARCENY—RECENT POSSESSION—INSTRUCTIONS—"FOUND."

4. In a prosecution for larceny, an instruction as to defendant being found in the recent possession of stolen property is applicable, though the property is not found in defendant's possession, but in the possession of one to whom he had sold it, since the word "found," as used in instructions of this character, simply means "discovered," "traced to," or shown to have been in defendant's possession.

LARCENY—RECENT POSSESSION—INSTRUCTIONS—CONSTRUCTION.

5. The term "recent possession," as used in an instruction in a prosecution for larceny, as to the "recent possession" of stolen property, is merely relative, and depends on all circumstances of the case, and whether it is sufficiently recent to justify drawing an inference is usually a question of fact for the jury.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—WEIGHT OF EVIDENCE.

6. In a larceny prosecution, an instruction that if, shortly after the theft, the property was found in the possession of defendant, and defendant has failed to explain how he obtained such possession, his failure to make such explanation may be considered as a circumstance tending to show defendant's guilt, and given such weight as seemed proper in connection with the other evidence in the case, is not erroneous as assuming a theft or as assuming that defendant's explanation was unreasonable.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—REQUESTS.

7. Requested instructions covered by the general charge are properly refused.

EVIDENCE—TRANSCRIPT ON APPEAL.

8. Where it is contended that the evidence was not sufficient to justify the verdict, the transcript on appeal must show the objections to be well taken, otherwise the court will not devote the time nor occupy the space to discuss it.

CRIMINAL LAW—TRIAL—REBUTTAL EVIDENCE—ADMISSIBILITY.

9. In a larceny prosecution in which a foundation is laid for the admission of impeaching evidence by asking defendant the truth of certain admissions which he was alleged to have made, which he denied, a witness may not testify on rebuttal as to the making of such admissions, unless the evidence is limited to the purpose of impeachment, where the admissions are prejudicial to defendant and part of the state's case.

From Union: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE MCBRIDE.

The defendant, John Minnick, was indicted, tried, and convicted in the circuit court of Union County upon an indictment charging him with the larceny of two heifers. He was sentenced to one year in the penitentiary, and, being dissatisfied, appeals.

Those portions of the indictment material to this opinion are as follows:

"John Minnick is accused by the grand jury of the county of Union and State of Oregon by this indictment of the crime of larcency of two heifers, committed as follows: The said John Minnick, on the 25th day of March, 1908, in the county of Union and State of Oregon, did then and there take, steal, and carry away and then and there take, steal, drive, and lead away, two heifers, then and there the personal property of one W. A. Ogden and said personal property then and there of the value of thirty dollars."

There was no demurrer or motion to set aside the indictment.

The court instructed the jury, among other things, as follows:

"(1) I instruct you that larceny consists in the felonious taking, stealing, and carrying away of the property of another, and if you find in the evidence in this case, beyond a reasonable doubt; that the defendant, John Minnick, in Union County, Oregon, on or about the 25th day of March, 1908, feloniously took, stole, and carried away, or drove away, the two heifers described in the indictment, or either of them, and that the heifers or either of them, at the time, were the property of one W. A. Ogden, mentioned in the indictment, and were of some value, then it will be your duty to find the defendant guilty as charged in the indictment. (2) I instruct you that if you believe from the evidence, beyond a reasonable doubt, that the animals mentioned in the indictment or either of them were stolen from W. A. Ogden, and that W. A. Ogden was the owner thereof, and that shortly after the theft the same was found in the possession of the defendant, and defendant has failed to explain how he obtained such possession, his failure

to make such explanation may be considered by you as a circumstance tending to show defendant's guilt and given such weight as you deem proper in connection with the other evidence in the case."

And, at defendant's request, the court gave the following instructions:

"(1) Where the finder of goods does not know the owner, and has nothing to indicate who the owner may be, or where he may be found, his appropriation of the goods or property will not constitute larceny. (2) To constitute larceny there must be a simultaneous combination of unlawful taking, asportation, and felonious intent. (3) I instruct you that if you find that at the time the defendant took possession of the two heifers described in the indictment, and at the time he sold them to Mr. Gale, he believed them to be his own, then it is immaterial whether he cut off a part of one of the ears, as he would have a right to do as he pleased, believing them to be his own property. (4) The fact that the defendant, after Mr. Ogden had taken possession of the two heifers, offered to buy them, is not of itself any evidence of guilt, provided he had prior to that time entertained an honest belief that the two heifers were his property, and he would have a right to buy the same of Mr. Ogden or make any settlement with him to avoid any further trouble concerning the same. (5) You should view with caution the testimony of a witness of conversations heard over the telephone, as it is evident for hearing and understanding correctly is not so good as being present and hearing a conversation. (6) I instruct you there can be no larceny of property where the defendant honestly believes the property to be his own, even though the property in controversy might belong to another. The fact of his not being the owner is entirely immaterial so long as he entertains an honest belief of his ownership."

The court further instructed the jury as to the weight of evidence and reasonable doubt, fully covering statutory requirements. The following instructions requested by defendant were refused:

"(1) I request you to return a verdict for the defendant. (2) I instruct you that if you find from the evidence

in this case that the two heifers described in the indictment came to the defendant's place with his other cattle, and that he let them run with his cattle during the winter, and took care of them with his others, and at the time they came into his possession he did not intend to steal them, but the intention to steal them came upon him later, and in pursuance to this intention, formed afterwards, he did convert the same to his own use by selling them, this would not constitute larceny, and in that case your verdict should be for the defendant. (3) I instruct you that in this case, before you can find the defendant guilty, you must be satisfied beyond a reasonable doubt that, at the time the two heifers came to the defendant's place, he then and there intended to steal them, and there must be some facts or circumstances indicating such intention other than allowing the same to run with his cattle, and the fact that he afterwards sold them is not of itself proof of an original intent to steal the said animals. (4) In order to constitute larceny, the defendant must have intended to appropriate the animals to his own use, at the time they first came into his possession, and that a conversion in pursuance of a subsequently formed intention would not make him guilty of larceny. (5) The indictment in this case alleges that the two heifers are of the value of the sum of $30, and, the value being thus alleged, the State must prove the value as alleged, to your satisfaction beyond a reasonable doubt, before you can find the defendant guilty."

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Leroy Lomax.*

For the State there was a brief and oral arguments by *Mr. Francis S. Ivanhoe,* District Attorney, and *Mr. Andrew M. Crawford,* Attorney-General.

Mr. Justice McBride delivered the opinion of the court.

1. The first objection urged by appellant is that the indictment does not state facts sufficient to constitute a crime. There was no demurrer or motion to set aside the indictment, and if, taking the indictment as a whole, the essential elements constituting the offense of larceny can be found in it, the objection must be overruled.

2. It is substantially charged that the defendant took, carried, stole, led, and drove away two heifers, contrary to the statutes. The word "feloniously" is not used in connection with taking; but, if larceny is otherwise described, the omission of that word can only go to the question of the degree of the offense, since, if it was the intent of the pleader to charge simple larceny of property of less than the value of $35, it would be mere surplusage to charge that the act was feloniously committed. We think the words "take, steal, and drive away" are sufficient to describe larceny. Webster gives the primary meaning of the word "steal" as follows:

"To take and carry away feloniously; to take without right or leave, and with intent to keep wrongfully."

When we say of a person, "He stole a horse," we are not merely uttering a conclusion of law, but stating a fact in language that everybody, from the college professor to the common laborer, can understand. An indictment is definite enough if the facts are so stated as "to enable a person of common understanding to know what is intended." Section 1303, B. & C. Comp. Under a similar statute the Supreme Court of California has held an indictment, almost identical with the one in the case at bar, in this respect, to be sufficient to charge a felony. *People* v. *Lopez*, 90 Cal. 569 (27 Pac. 427).

3. The next question that arises is: What grade of larceny is described in the indictment? Section 1801, B. & C. Comp., is as follows:

"If any person shall commit the crime of larceny by stealing any horse, gelding, mare, mule, ass, jenny, or foal, bull, steer, cow, calf, hog, dog, or sheep, such person on conviction, shall be punished," etc.

It will be seen that the statute makes no mention of heifers in describing the bovine animals that are the subject of larceny, and it is objected that, as they are not specifically included, the larceny of a heifer is not grand larceny under the statute referred to. The prose-

cution contends that as a heifer is a young cow, and the indictment charges the defendant with stealing two heifers, it is equivalent to charging him with stealing two young cows. This is a question that occupied our ancient brethren of the bench, more than a century ago. In the case of *The King* v. *Cook,* 1 Leach (C. C.) 105, decided in 1774, wherein Cook was indicted for stealing a cow, it is stated: "The animal stolen was a female beast only two years and a half old, that had never had a calf; and a female beast of the cow kind, how old soever, if she has never had a calf, is always called an heifer." The opinion of the twelve judges of the King's bench was that the defendant could not be convicted, for the reason that the statute, upon which the indictment was founded, mentioned both "heifer" and "cow" in describing the several animals it was designed to protect, and therefore that one must be used in contradistinction to the other. It will be observed that the reason given by the court for its decision in that case does not exist in our statute, which, as before observed, does not mention heifers. In *People* v. *Soto,* 49 Cal. 67, an indictment for larceny of a cow was held to authorize a conviction, where the proof showed that defendant had stolen a heifer, and there are many decisions to that effect, and such is undoubtedly the law. Had the indictment in this case charged the defendant with stealing a cow, we have no doubt that a heifer, being a young cow, and therefore within that class of animals, would come within the terms of the indictment, on the theory that the greater includes the less; but we are of the opinion that, taking the indictment as a whole, it does not appear that there was an intent to indict the defendant for a felony. Under our constitution a defendant has a right "to demand the nature and cause of the accusation against him," and this certainly includes the right to be informed whether the State intends to prosecute him for a felony or for a misdemeanor. If the State intended to charge him with steal-

ing cows, it should have said so in the indictment. Instead of this, the indictment omits all reference to the terminology of the statute, omits the word "feloniously" prescribed in the forms for indictments for grand larceny, and specifies the value of the animals taken, which is necessary in petty larceny, but wholly unnecessary in grand larceny, under this section. A labored construction of this indictment might bring it within the bare technical pale of grand larceny; but we would have to say that "heifers" meant "cows," that "steal" and "feloniously took" meant the same thing, and make a new pleading by a forced and unnatural construction of the one upon which defendant was tried. We think a fair construction of the indictment is to say that it fully and clearly charges the defendant with simple larceny of property of the value of $30.

4. Objection was made on the trial to the giving by the court of instruction No. 6, in relation to a defendant being found in the recent possession of stolen property. It is contended that the instruction was not applicable because the property was not found in defendant's possession, but in the possession of Gale, to whom he had sold it; but the word "found," as used in instructions of this character, does not mean "found by the owner." It simply means "discovered," "traced to," or shown to have been in defendant's possession. In this case the property was found, by witness McDow, in defendant's possession, in the winter of 1907, when he worked for him, and by witness Gale, when he purchased the property.

5. The term "recent possession" is merely relative and depends on all the circumstances of the case, and whether it is sufficiently recent to justify drawing an inference of guilt from it is usually a question of fact for the jury.

6. We do not agree with counsel for appellant that the instruction assumes a theft or assumes that defendant's explanation was unreasonable. The instruction was couched in the usual language used by the courts and

left the facts as to the time and manner of defendant's possession and the reasonableness of his explanation to the jury, where they properly belonged.

7. The other instructions, asked by defendant and refused, were, in our opinion, sufficiently covered by the general charge. They were not given in the language of defendant's request; but the substance of those which were proper is there.

8. It is contended that the evidence was not sufficient to justify the verdict. We have carefully gone over it as it appears in the transcript, and cannot say that it was insufficient. To take it up and discuss it at length would occupy more space than would be profitable in this opinion, and would be of no interest to any one except the defendant, and wholly unprofitable to him.

9. After the defendant had rested his case, the prosecuting witness was recalled in rebuttal, and asked concerning certain statements made to him by defendant, in regard to the cattle; among others, being an alleged statement, that the heifers had come up sucking his cows, and a foundation having been laid by putting an impeaching question to defendant on cross-examination and a denial by him of the alleged statements. This was error. The admissions sought to be proved, if actually made, were highly prejudicial to defendant, and were proper testimony in chief, and, if admissible at all, after defendant had rested, would only be as evidence to impeach the veracity of the witness, and its effect should have been limited by the court to that purpose. To admit it generally and for all purposes was error.

T. B. Johnson was called in rebuttal by the State and, as an expert, testified, generally, as to the apparent age of the calves, their actions, indicating that they had been raised on skim milk, and other circumstances which tended to support the theory of the prosecution in the case. The evidence given by him was in no sense rebuttal, but was a part of the State's case in chief, and, under

such circumstances, it was error to admit it. *State* v. *Hunsaker*, 16 Or. 497 (19 Pac. 605). We do not hold that the State may not, in a proper case and by leave of the court, obtained for that purpose, reopen its case and introduce evidence in chief, even after defendant has rested his case; but this was not done in the case at bar. The record shows that the testimony was offered simply in rebuttal. No reason was given, or showing made, to explain why it was not offered as part of the prosecutor's case in chief. While in a civil case we would not feel inclined to interfere with the discretion of the court in the order of proof, unless there appeared a clear abuse of such discretion, we think a more strict rule should be invoked in a case where the liberty of a citizen is involved, and that this is not a case that comes under the principle announced by this court in *Crosby* v. *Portland Ry. Co.*, 53 Or. 496 (101 Pac. 204).

For these errors the judgment of the lower court is reversed, and the case remanded, with directions to try the defendant for simple larceny.    REVERSED.