Argued September 15, affirmed October 12, 1926.

# STATE v. GILES L. COLEMAN.

## (249 Pac. 1049.)

Larceny—Defendant Charged With Larceny in an Office Held not Entitled to Directed Verdict of not Guilty on Ground That Offense, if Any, was Embezzlement or Larceny of Public Money §§ 1948, 1955. 1957, Or. L.).

1. Head janitor of courthouse, also a general deputy sheriff, charged with having taken money from sheriff's office and prosecuted, under Section 1948, Or. L., for larceny in an office, *held* not entitled to directed verdict of not guilty on ground that his offense, if any, was embezzlement under Section 1955, or larceny of public money, under Section 1957.

### Embezzlement.

2. Embezzlement is a form of larceny, though, under Section 1955, Or. L., it is a distinct offense unknown at common law.

### Larceny.

3. Under Sections 1947, 1948, 1955, Or. L., "larceny" involves idea of unlawful acquisition, whereas "embezzlement" is fraudulent conversion of property, possession of which was lawfully acquired.

### Larceny.

4. Section 1037, Or. L., authorizes deputy to perform only lawful acts and duties of principal; hence deputy entering sheriff's office for unlawful purpose is trespasser as affects nature of his unlawful acts.

### Larceny.

5. In prosecution under Section 1948, Or. L., of deputy sheriff for larceny in an office, admission of testimony in explanation of system of working on tax-roll and with reference to so-called automobile fund *held* not error.

### Criminal Law.

6. In prosecution under Section 1948, Or. L., for larceny in an office, testimony as to suspicious actions of defendant after date of alleged offense *held* competent.

### Criminal Law.

7. In prosecution of deputy sheriff for larceny in an office, admission of testimony of county judge as to conference had, though irrelevant, *held* not reversible error, in view of Section 1626, Or. L.

---

2. See 9 R. C. L. 1264.
3. See 9 R. C. L. 1266.
4. See 26 R. C. L. 943.

**Criminal Law.**

8. In prosecution of deputy sheriff for larceny in an office, sustaining objection to question asked witness concerning an I O U executed by another deputy who had testified against defendant *held* not error.

**Criminal Law.**

·9. Defendant in a criminal case cannot be permitted to show that a third person has admitted that he committed the crime charged.

**Witnesses.**

10. Under Section 704, Or. L., witness cannot be impeached by merely showing that at some time in the past he has executed an I O U.

**Criminal Law.**

11. Court's language in sustaining objection to question concerning an I O U executed by an opposing witness to the effect that such matter was brought out by defendant, and was not material, *held* not prejudicial.

Criminal Law, 16 **C. J.**, p. 643, n. 50, p. 831, n. 74; 17 **C. J.**, p. 317, n. 10.
Embezzlement, 20 **C. J.**, p. 409, n. 2, p. 410, n. 6, p. 413, n. 17, 19.
I O U, 33 **C. J.**, p. 813, n. 59.
Larceny, 36 **C. J.**, p. 784, n. 7 New, 8, 21, 23, p. 878, n. 60.
Witnesses, 40 **Cyc.**, p. 2555, n. 39, 40, p. 2743, n. 50 New.

From Wasco: Fred W. Wilson, Judge.

Department 2.

The defendant was accused by the grand jury of the Circuit Court of the State of Oregon for Wasco County, of the crime of larceny in an office, of $256.36, lawful money of the United States of America, and the personal property of Wasco County, Oregon. Upon his arraignment, he entered a plea of not guilty to the indictment. He was tried and found guilty, and judgment was entered upon the verdict, whereby he was sentenced to serve three years in the penitentiary. On appeal to this court, he asserts that the court erred in receiving certain evidence and in rejecting other evidence, and in denying defendant's request for certain instructions.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Van Vactor & Butler,* with an oral argument by *Mr. R. R. Butler.*

For respondent there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Francis V. Galloway,* District Attorney, with an oral argument by *Mr. Galloway.*

BROWN, J.—At the time of the alleged commission of the offense, the defendant, with his family, was living in the basement of the courthouse of Wasco County. He was head janitor of that building and had a pass-key to all of the rooms therein. He was also a general deputy sheriff of that county and was specially charged, by instructions from the sheriff, with the performance of the duties of jailer. In the execution of these duties, he carried meals to the prisoners and looked after the jail in general. The sheriff's office being situate in the courthouse, the defendant had access thereto as janitor, as well as in his capacity of deputy sheriff. On the date of the alleged larceny, George Scherrer and Dorothy Bailey were also deputies, and, as such, they were charged by the sheriff with, and their duties consisted of, the collection of taxes and the performance of all necessary office work in relation thereto. The defendant collected no taxes or any other moneys for Wasco County. The tax money, when collected, was placed in a vault in the sheriff's office, the inside doors of which were locked and unlocked with a key, the outer doors being opened by a combination. The office was regularly closed from 12 M. to 1 P. M. Before leaving the office at noon, the deputies habitually locked the inside doors of the vault, leaving the

outer doors open. But three keys were known to be in existence that would unlock the inner doors of the vault. On one occasion the defendant had had an additional key made for the use of the office, but no key was ever given to him for his use.

Levi Chrisman, the sheriff, testified that he had been sheriff of Wasco County since July 2, 1906, and that he had appointed the defendant a deputy. He testified concerning the location of the vault; that it was open from 8 o'clock A. M. until noon; that the inside doors were locked from 12 M to 1 P. M. and again open from 1 to 5 o'clock P. M.; that on May 15, 1925, feeling ill, he went to town "and got a light lunch." He said:

"For several days I had been on the sick list. I was feeling very bad, and Friday I felt worse than usual. * * I thought I would come up to the office and lie down * * . I came up to the office and came in, and I guess it must have been about five minutes past twelve. I did not look at my watch. And when I opened the door, as quick as a flash I seen somebody—I knew it was a person—jump from the vault into the cloakroom. Automatically I felt back to see if my gun was handy and walked around, * * as the door opened towards the front door, and · it was about half open, and by the time I got back to see who was in the cloakroom, I could see that the safe door was unlocked, plainly in view, and I seen who I recognized as Mr. Coleman there; and he was squatted down and he seemed to be working on his hands some way. * * He immediately got up and came out, and he says: 'Miss Howell is looking for you. Come on, Levi, let's go and see Miss Howell,' very much excited, extremely so; and I says, 'I don't want to see Miss Howell.' He says, 'Yes, come on. Let's see Miss Howell. She is hollering for you.' * * I said, 'I don't want to see Miss Howell.' He says, 'You come on. You want to see Miss Howell.' And

119 Or.—28

I says, 'To h—— with Miss Howell.' And he got around to the end of the counter and started towards the front door and made four or five steps and then whirled around and comes back. He was very much excited and he says, 'Let us go down stairs, Levi.' I says, 'I don't want to go down stairs.' He says, 'Yes, come on. Let's go down.' I says, 'No, I don't want to go down stairs.' He says, 'Yes, come on. I want a drink.' I says, 'I am not going down stairs.' With that, he went out through the office."

Witness testified that he examined the vault and found that the inner doors were unlocked and open; that, when the office deputies returned about 1 o'clock, he instructed them immediately to make a check of the cash and find how things stood; that, on making the check, they found a shortage in the tax moneys of the amount charged in the indictment.

The record is replete with instances of the suspicious conduct of the defendant from the time the sheriff discovered him in the office as above set out until his arrest. The testimony tends to show that, on one occasion, he went into the office and returned $80 to the vault; that he confessed to taking the money, and that he attempted to make arrangements with deputy George Scherrer to replace the balance. Upon the trial he vigorously contested the charge contained in the indictment, and denied both the taking and the confession.

1. The important point in this appeal relates to the court's denial of the defendant's motion to direct an acquittal. A discussion of this point embraces the applicability of defendant's requested instructions numbered 1 and 2, directing a verdict of not guilty. Defendant's counsel forcefully maintain the position that, if their client is guilty of the crime of taking the moneys described in the indictment, he is guilty of the crime of embezzlement, as defined by Section

1955, Oregon Laws, or the crime of larceny of public moneys, as defined by Section 1957, Oregon Laws, but that he is not guilty of larceny in an office, as set down by Section 1948, Oregon Laws.

At the conclusion of the State's case in chief, the defendant moved the court as follows:

"At this time the defendant moves the court for an order directing the jury to return a verdict of not guilty for the following reasons: That this is an indictment charging the defendant with larceny from an office, that it plainly appears, and affirmatively appears, that the elements necessary to constitute larceny are wholly lacking, in that one of the chief ingredients of larceny is trespass; and it affirmatively appears that, at the time of the alleged taking, the defendant was a duly appointed, qualified and acting deputy sheriff of Wasco County, Oregon, under appointment of the duly appointed, qualified and acting sheriff of Wasco County, Oregon, and Section 1037 of Oregon Laws provides that a deputy sheriff has the power to perform any act or duty that his principal has; such being the case and the law, there was no trespass shown, and no trespass could be shown. If the facts prove or tend to prove any crime, they tend to prove the crime of embezzlement or the crime defined in section 1957 of Oregon Laws with reference to public officers, and for that reason there is a fatal variance and an entirely independent offense, if any at all, proven."

2, 3. The crime of embezzlement did not exist at common law. It is essentially a statutory offense: 20 C. J. 407, 410. Embezzlement is a form of larceny: *State* v. *Browning,* 47 Or. 470 (82 Pac. 955). But under the statute it is a separate and distinct offense. Larceny involves the idea of an unlawful acquisition, whereas embezzlement is a fraudulent conversion to his own use of personal property after its possession has been lawfully acquired by the

embezzler. See Sections 1947, 1948, 1955, Or. L.; Rapalje on Larceny and Kindred Offenses, § 372; 2 Wharton's Criminal Law (11 ed.), § 1256; 2 Bishop on Criminal Law (9 ed.), §§ 318–383. The following excerpt marks the distinction between larceny and embezzlement:

"A domestic servant, farm laborer, clerk in a store or office, teller, bookkeeper, or clerk in a bank, workman in a factory, brakeman on a railroad train, foreman of a railroad warehouse or a clerk therein, hostler, drayman, stevedore, weigher, or person employed in any other capacity as the servant of another, who feloniously takes and carries away the money or goods of his master, to which by reason of his employment he has access, is guilty of larceny, and not of embezzlement; and the fact that the taker was the regular custodian, or was temporarily in charge of the building, or was his master's agent in charge of the office from which the thing stolen was taken, does not affect his guilt, for in none of these cases did he have any possessory rights in the things committed to his care." 36 C. J., p. 784.

2. Bishop on Criminal Law, Section 331, lays down the following rule for interpretation of embezzlement statutes:

"Embezzlement statutes, being penal, are to be strictly limited to persons within their words, and not made to include any others. * * "

Or. L., Section 1957, denounces as a crime larceny of public moneys, in language following:

"If any person shall receive any money whatever for this state, or for any county, * * or shall have in his possession any money whatever belonging to such state, county * * , or in which such state, county, * * has an interest, and shall in any way convert to his own use any portion thereof, * * such person shall be deemed guilty of larceny, and upon conviction thereof shall be punished. * * "

Under this statute, money collected by a sheriff for taxes is the property of the county in his hands, and he may be guilty of larceny by converting the same to his own use: *State* v. *Dale,* 8 Or. 229; *State* v. *Neilon,* 43 Or. 168 (73 Pac. 321). But in the case at bar, the defendant Coleman never received the money as taxes, nor was it ever in his possession. It was received in the name of the sheriff, by deputies George Scherrer and Dorothy Bailey, who, after making proper record entry, placed the funds in the vault belonging to the sheriff's office. The tax money, when taken as alleged, was in the constructive possession of Chrisman, as sheriff of Wasco County, Oregon, and he was bonded for the safe keeping of that fund.

4. The defendant contends, in effect, that, because of his appointment as a deputy sheriff under Section 1036, Oregon Laws, his entry into the sheriff's office and the abstraction of moneys from the vault lacked the element of trespass essential to the commission of the crime of larceny in an office. Larceny in an office involves the crime of simple larceny, and the offense is aggravated by the fact that the property is within the protection of the building. Under a general appointment as deputy, the defendant was authorized to perform the lawful acts and duties of his principal: Or. L., § 1037. However, the statute conferring power upon the deputy authorizes the performance of lawful, and not unlawful, acts. We have seen that the defendant was the head janitor of the courthouse. As a janitor, he had authority to unlock the door of the sheriff's office during the noon hour, or at any other time, for the performance of his duties as such janitor. Moreover, as a deputy sheriff, and in the execution of his lawful duties as such

deputy, he was within the law in entering the sheriff's office. But when the defendant, as a janitor, or as a deputy, entered the sheriff's office, not for the performance of a lawful act. but with the intent of taking, stealing and carrying away the property of Wasco County then in the lawful possession of the sheriff of that county, he became a trespasser and his entry was unlawful. Or, if the defendant entered the office for a lawful purpose, but, after such entry, conceived and executed a felonious design to take and convert the public funds kept in the vault, he was a trespasser.

Concerning trespass, the editors of Ruling Case Law lay down the following principle in language clear and concise:

"The rule is well established that, where an authority given by law is exceeded, the party loses the benefit of his justification, and the law considers him a trespasser *ab initio,* although to a certain extent he followed the authority given. The law will operate retrospectively to defeat all acts thus done under color of lawful authority, when he exceeded, and *a fortiori* will it operate retrospectively to prevent the acquisition of any lawful right, by the excess and abuse of an authority given for useful and beneficial purposes." 26 R. C. L., "Trespass," § 18.

5. The court did not err in permitting deputy George Scherrer to testify in explanation of the system of working on the tax-roll in the sheriff's office, nor was its ruling erroneous in the matter of Scherrer's testimony with reference to the so-called "Automobile Fund."

6, 7. The defendant assigns as error certain testimony given by Hon. J. T. Adkisson, County Judge of Wasco County. The testimony of the judge in the matter of the suspicious actions of defendant follow-

ing the date of the alleged commission of the offense was competent. But the fact, as stated by the witness, that a conference was held, having for its purpose the consideration of the crime alleged to have been committed by the defendant, does not appear to have been relevant. However, from a careful survey of the record, we are confident that the admission of that testimony did not affect the substantial rights of the defendant: Or. L., § 1626.

8. The defendant assigns error of the trial court in sustaining an objection to the testimony of Harry Dodge relating to an I O U. Through his counsel, the defendant inquired of the witness:

"Mr. Dodge, I will ask you to state if, at any time previous to the time you quit the sheriff's office, or were discharged by the sheriff, if you discovered any I O U, or any evidence of debts belonging to the office there."

In ruling upon the objection interposed by the state, the court said:

"What was said about the I O U was brought out on cross-examination (by the defendant). The state did not introduce that testimony. Whether there were I O U's or whether there were not is not material in this particular instance, and I will sustain the objection of the state."

9, 10. The defendant further argued that what the court said in the presence of the jury was prejudicial to him. From an examination of the record, it is very apparent that the I O U referred to in the defendant's inquiry was in no way conjoined with the offense charged against the defendant. There is nothing in the record indicating that the I O U was associated with any crime, or that it bore any relation whatever to the funds alleged to have been feloniously taken by the defendant. The most that

defendant can claim for the I O U is that, some years prior to the alleged commission of the offense, deputy Scherrer admitted that he owed the sheriff forty dollars. It is a well-established principle of criminal law that a defendant in a criminal case cannot be permitted to show that a third person has admitted that he committed the crime charged against the defendant: *State* v. *Fletcher,* 24 Or. 295 (33 Pac. 575); *State* v. *Morse,* 35 Or. 462 (57 Pac. 631); *Farrell* v. *Weitz,* 160 Mass. 288 (35 N. E. 783); Indirect and Collateral Evidence, Gillett, §§ 227, 228. While the presumption that a witness speaks the truth may be overcome by the manner in which he testifies, by the character of his testimony, or by evidence affecting his motives (Or. L., § 704), he may not be impeached by showing merely that, at some time in the past, he executed an I O U. Furthermore, an I O U is not a badge of dishonor. An I O U is thus defined:

"I. O. U. A memorandum of debt consisting of three letters, a sum of money, and the debtor's signature." 33 C. J., 813.

It has a lawful place in commercial paper as an acknowledgment of debt: 8 C. J., p. 116, § 210.

11. The objection to the language used by the court is without merit.

We have considered all the alleged errors but find no good and sufficient reason for reversing this case. The judgment appealed from is affirmed.

                                      AFFIRMED.

McBRIDE, C. J., and BEAN and COSHOW, JJ., concur.