Argued March 7, reargued May 10, reversed and remanded
June 14, 1968

## STATE OF OREGON, *Appellant, v.* REX ORVILLE LAVERN STUART, *Respondent.*

442 P. 2d 231

*Jacob B. Tanzer,* Assistant Chief Deputy District Attorney, Portland, argued the cause for appellant. With him on the brief was George Van Hoomissen, District Attorney.

*Bruce J. Rothman,* Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

GOODWIN, J.

This is an appeal by the state from a judgment for the defendant on a demurrer to the indictment.[1] Such an appeal is authorized by ORS 138.060(1).

The indictment is in two counts. The first count charges the crime of "embezzlement by bailee" committed as follows:

> "The said ORVILLE LAVERN STUART on or about the 4th day of May, A.D. 1967, in the County of Multnomah and State of Oregon, and having possession of certain personal property, to-wit, a Mercury automobile, the personal property of Airways Rent-A-Car of Oregon, a corporation, and over the value of $75.00, which said Mercury automobile had theretofore been delivered to and intrusted to said defendant's care, control and use, the aforesaid defendant did unlawfully and feloniously fail, neglect and refuse to deliver, keep and account for the aforesaid personal property according to the nature of his trust * * *."

---

[1] The defendant filed a motion to strike the indictment, which the parties agreed should be treated as a demurrer.

The second count charges the crime of "possessing stolen motor vehicle" as a part of the same act and transaction alleged in the first count and committed as follows:

"The said ORVILLE LAVERN STUART on or about the 4th day of May, 1967, in the County of Multnomah and State of Oregon, and not being an officer of the law engaged in the performance of his duty as such officer, the said defendant did unlawfully and feloniously have in his possession a certain stolen motor vehicle, to-wit, a Mercury automobile, the property of Airways Rent-A-Car of Oregon, a corporation, said defendant having reason to believe that said motor vehicle had theretofore been stolen * * *."

The state concedes that each count refers to the same automobile and, as the indictment alleges, each count involves the same act and transaction.

The ground of the demurrer is that the count charging embezzlement of the automobile is so inconsistent with that charging possession of a stolen automobile that if one is true the other cannot be, since in embezzlement the taking is always lawful, while property is "stolen" only if unlawfully acquired. Thus, according to the defendant, an improper joinder appears from the face of the indictment.

■■ Count I of the indictment charges a violation of ORS 165.010, which defines the crime of embezzlement, generally known as larceny by bailee. Count II charges a violation of ORS 481.990(4), which in part codifies a special statute relating to motor vehicles first enacted in 1927. Oregon Laws 1927, ch 364, § 3 (9-e). The particular subsection in question denounces certain acts, and provides that any person "who has in his possession any motor vehicle which he knows, or

has reason to believe, has been stolen, and who is not an officer of the law engaged at the time in the performance of his duty as such officer, shall be deemed guilty of a felony." The motor-vehicle statute prescribes heavier penalties than those found in ORS 165.045, the general statute defining the crime of buying, receiving or concealing stolen property.

ORS 132.560 provides:

"The indictment must charge but one crime, and in one form only, except that:

"(1) Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative.

"(2) When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

Subsection (2), an amendment adopted in 1933, Oregon Laws 1933, ch 40, appears to have been considered by this court in but two cases: *State v. Tracy,* 246 Or 349, 425 P2d 171 (1967); *State v. Huennekens,* 245 Or 150, 420 P2d 384 (1966). The facts of these cases are not relevant here, but both decisions recognize the obvious truth that if multiple crimes charged in one indictment could not have been part of the same act or transaction the indictment is defective. Cf., *State v. Carlton,* 233 Or 296, 298, 378 P2d 557 (1963). Whether the impossibility inheres in the facts or arises out of the law, an indictment so framed is necessarily demurrable. We do not understand this to be disputed by the state; rather, the state contends that there is no inconsistency between the two counts for the rea-

son that a person may be convicted of embezzling an automobile and of possession of a "stolen" automobile even though the proof shows that the "stolen" automobile was in fact "embezzled." This last contention presents the principal issue now before us.

There is no gainsaying the defendant's contention that the word "steal" as used in Oregon larceny statutes usually is found in context with other words describing a felonious asportation, as in ORS 164.310(1): "Any person who steals the property of another, or who willfully takes, carries, leads or drives away the property * * *." See, also, Black's Law Dictionary, "steal," at 1583 (1957). We do not agree, however, that it follows that the Legislative Assembly intended in ORS 481.990(4) to limit the word "stolen" to automobiles that had been taken from their owners by an act of trespass. See Black's Law Dictionary, supra at 1584.

 The context in which Oregon Laws 1927, ch 364, § 3 (9-e) (now ORS 481.990(4)) was written reveals an intent to control two related evils: (1) falsification of certificates of title to motor vehicles, and (2) trafficking in unlawfully possessed automobiles. It is unlikely that the Assembly intended to declare unlawful the possession (with requisite knowledge) of an automobile taken by a trespasser and at the same time intended to leave untouched the same character of possession of an automobile taken by a felonious bailee. Rather, it seems reasonable to believe, the Assembly meant to control traffic in automobiles for which, by reason of criminal misconduct, a good title could not be given, and for which the word "stolen" provided a commonly understood and general definition.

It is, of course, possible to construct a logical argument to the effect that since "stolen" is the past parti-

ciple of "steal," ORS 481.990(4) uses the word with all the limitations that have been engrafted upon the word "steal" by the common law and statutory law of larceny in this state. We believe, however, that such a statutory construction is more faithful to theory than to reality. Since no law-enforcement purpose can be discerned for such an intent upon the part of the Assembly, it would be necessary to ascribe such an intent to the realm of whimsy or to legislative feckless-ness. Under ORS ch 174[20] we are obliged to resort to neither of these uninviting ascriptions. See *United States v. Turley*, 352 US 407, 77 S Ct 397, 1 L Ed 2d 430, 56 ALR2d 1300 (1957).

The indictment is not a model pleading, but it advises the defendant that he is charged with two related offenses arising out of the same unlawful transaction: (1) felonious conversion of an automobile by a bailee thereof; and (2) wrongful possession of an automobile known by the possessor to have been obtained by criminal means within the commonly understood meaning of the word "stolen." See *Nugent v. Union Auto Ins. Co.*, 140 Or 61, 65, 13 P2d 343 (1932). Accordingly, the indictment was good against the demurrer, and the demurrer should have been overruled.

Reversed and remanded.

LUSK, J., dissenting.

In *State v. Tauscher*, 227 Or 1, 23, 360 P2d 764, 88 ALR2d 674, this court said, speaking of criminal stat-

---

[20] ORS 174.020 "In the construction of a statute the intention of the legislature is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it."

ORS 174.030 "Where a statute is equally susceptible of two interpretations, one in favor of natural right and the other against it, the former is to prevail."

utes under construction in that case: "It is unfortunate that ORS 165.005 and 164.310 are so narrowly drawn. However, the task of remodeling these statutes is for the legislature and not for the courts." Since then the Legislature has created a Criminal Law Revision Commission charged with the duty of preparing a revision of the criminal laws of this state, both substantive and procedural, Oregon Laws 1967, ch 573.

Apparently, the majority of the court think that the task of revision is not going forward apace, for its opinion in this case is nothing less than a remodeling of the law of this state relating to larceny and embezzlement. However, as recently as June 10, 1968, the Commission issued its tentative draft of proposed changes in the law of theft, which, if adopted by the Legislature, would effect reforms, no doubt desirable, some of which the court has now undertaken to effect by judicial fiat.

The State, to support its contention that "stolen" in ORS 481.990 (4) means also "embezzled," took two lines, first, that a person may be prosecuted for receiving embezzled property under ORS 165.045, which makes it a crime to buy, receive or conceal stolen property, knowing it to have been stolen and, therefore, a person can be prosecuted for possessing an embezzled motor vehicle under ORS 481.990 (4); and second, that ORS 481.990 (4) discloses, or should be interpreted as disclosing, a legislative intent to include "embezzled" in "stolen."

The opinion of the court pays scant attention to the first proposition and approves the second. This opinion will discuss both as, in my view, "stolen" has the same meaning in both statutes, and that is not the meaning which the court gives it.

Elementary propositions upon which all agree need first to be stated. I quote from *State v. Coleman,* 119 Or 430, 435-436, 249 P 1049:

"The crime of embezzlement did not exist at common law. It is essentially a statutory offense: 20 C. J. 407, 410. Embezzlement is a form of larceny: State v. Browning, 47 Or. 470 (82 Pac. 955). But under the statute it is a separate and distinct offense. Larceny involves the idea of an unlawful acquisition, whereas embezzlement is a fraudulent conversion to his own use of personal property after its possession has been lawfully acquired by the embezzler. * * *"

The larceny statute, as originally enacted in 1864, Deady, 1845-1864, p 536, § 547, provided: "If any person shall steal any goods or chattels, or [here follows an enumeration of specific articles of property made subject to the offense], such person shall be deemed guilty of larceny, * * *." The statute now reads:

ORS 164.310 (1):

"Any person who steals the property of another, or who wilfully takes, carries, leads or drives away the property of another with the intent to deprive such other of such property permanently, is guilty of larceny; * * *."

The remainder of the section, prescribing penalties and defining "property," as used in the statute, is not pertinent to this discussion. It is not open to doubt that "steal," as used in the statute, includes the idea of an unlawful taking and excludes the idea of a lawful taking. It is equated with common law larceny.

ORS 164.310 was designed to cover only those cases which would have been larceny at common law: *State v. Dooley,* 102 Or 563, 203 P 304. See, also, *State v. Tauscher,* supra, 227 Or at 20-21. As explained in the

*Tauscher* case, the larceny statute includes property which was not the subject of larceny at common law and what was said in the *Dooley* case "was apparently intended to mean only that the fundamental elements necessary to constitute larceny at common law are preserved by statute in Oregon." As we have seen, one of the fundamental elements is that the taking of the property amounted to a trespass. The word "steal" comprehends that element. This court approved this concept when it said in *State v. Minnick,* 54 Or 86, 91, 102 P 605: "We think the words 'take, steal, and drive away' are sufficient to describe larceny. Webster gives the primary meaning of the word 'steal' as follows: 'To take and carry away feloniously; to take without right or leave, and with intent to keep wrongfully.'" See, also, *State v. Downing,* 185 Or 689, 699-700, 205 P2d 141. It is unnecessary to labor the matter, however, for, if the word was not used in its primary sense in the larceny statute, it would not define the offense of larceny at common law.

The same session of the Legislature which enacted the larceny statute enacted the statutes defining the crimes of larceny by bailee (embezzlement), Deady, supra, 537, § 553 (now ORS 165.010 (1))① and receiving stolen property, id. 538, § 556 (now ORS 165.045).②

---

① ORS 165.010 (1): "Any bailee * * * who * * * fails, neglects or refuses to deliver, keep or account for, according to the nature of his trust, any money or property of another delivered or intrusted to his care, control or use, which is property within the meaning of ORS 164.310, shall be deemed guilty of larceny and shall be punished as provided in ORS 164.310."

② ORS 165.045: "Any person who buys, receives, or conceals or attempts to conceal any stolen money or property, knowing or having good reason to believe that it was stolen, shall be punished upon conviction by imprisonment in the penitentiary for not more than five years, or by imprisonment in the county jail not less than three months nor more than one year, or by a fine of not less than $50 nor more than $500."

But the Legislature did not include embezzled property in ORS 165.045; only stolen property is mentioned. "Stolen" is the past participle of "steal" and "steal" has the fixed meaning already shown to be incompatible with the idea of embezzlement.

Nevertheless, as above stated, counsel for the State argues that receiving or concealing embezzled property is denounced by ORS 165.045. I think this an essential prop of the State's position, if it can be sustained at all, for, if "stolen" does not include "embezzled" in ORS 165.045, it would be difficult to contend that "stolen" includes "embezzled" in ORS 481.990 (4).

The State's argument is based largely upon the statutory characterization of embezzlement as larceny. It is said in the brief (with reference to ORS 481.990 (4)) that, since one who embezzles property is by the "express terms" of ORS 165.010 guilty of larceny "the prohibition against possession of 'stolen' property therefore comprehends property taken under ORS 165.010, the embezzlement *qua* larceny statute."

The argument is ingenious, but fallacious. It ignores the distinction between larceny and embezzlement and ignores our prior decisions. The word "steal" is not used in the embezzlement statute and its meaning is not imported into that statute by the provision that one who violates it shall be "deemed guilty of larceny." As explained in the early case of *State v. Sweet,* 2 Or 127, 128 (1865) (opinion by Justice BOISE) decided the year after the adoption of the 1864 Act, "[t]he word 'larceny' is used in the statute simply to determine of what degree the offense shall be, and what its penalty." This statement was quoted with approval in *State v. Reinhart,* 26 Or 466, 476-477, 38 P 822

(opinion by Chief Justice ROBERT S. BEAN), where the court said:

"It is also contended that the indictment does not state facts sufficient to constitute a crime, because it does not contain the words 'feloniously take, steal, and carry away.' Under the English embezzlement statutes, and under similar statutes in many of the states in this country, the crime charged is larceny, and it is therefore thought necessary to allege in the indictment, in addition to the facts constituting the statutory offense of embezzlement, that 'the defendant feloniously did steal, take, and carry away' the property which is the subject of the indictment; thus, in effect, it would seem, charging two offenses: *Commonwealth v. Pratt,* 132 Mass. 246; Bishop's Directions and Forms, §§ 401, 402. But in this state it has been held, under our statute, (Hill's Code, § 1770,) that if the facts charged in the indictment describe the crime as defined in the statute, it is sufficient, and that the words 'shall be deemed guilty of larceny' are used in the statute simply to determine the decree [sic] of the offense and the punishment thereof: *State v. Sweet,* 2 Or. 127. This seems to us a reasonable construction of the statute, and in harmony with the general rule that it is sufficient to charge a statutory offense in the language of the statute."

These views were reiterated in *State of Oregon v. Cahill,* 208 Or 538, 559-560, 293 P2d 169, 298 P2d 214 (opinion by Justice BRAND), where we said:

"* * * At this point a distinction must be noted between three criminal statutes of this state defining three types of embezzlement. The first is embezzlement by officer, agent or servant. OCLA, § 23-523 (ORS 165.005.) The second is embezzlement by bailee. OCLA, § 23-524 (ORS 165.010), and the third is embezzlement of public funds. OCLA, § 23-525 (ORS 165.015.) Each of the three is given the name of larceny, though none of them

define any act known as larceny at common law. *None involve the common-law element of trespass to the possession of another.* These crimes are designated 'larceny' merely to indicate that the crime of embezzlement is equal to and shall be punished as larceny. *State v. Reinhart,* 26 Or 466, 38 P 822 (construing OCLA, § 23-523.) * * *." (Italics added.)

Again in *State v. Browning,* 47 Or 470, 82 P 955 (opinion by Justice Moore) the court, while holding that the statute which conferred upon the justice of the peace court jurisdiction of larceny likewise conferred jurisdiction of embezzlement, because of the words in the embezzlement statute "shall be deemed guilty of larceny," said: "Not larceny as the term was understood at common law, which necessarily involved an unlawful taking of the personal goods or chattels of another, but statutory larceny, which consists of a felonious conversion of the personal property of another, of which the person guilty thereof had the rightful possession." 47 Or at 473.

These decisions make it clear that, whatever may be the rule in other states,[9] in Oregon use of the phrase

---

[9] In 45 Am Jur 387-388, Receiving Stolen Property § 5, it is said:

"An essential element of the offense of receiving stolen property is that the property received must be stolen property. A previous theft of the property, with all the elements of that offense, must affirmatively appear, and if it does not, or if the fact appears that the property was not stolen, as where the original taking from the owner was without felonious intent or was not against his will or consent, the receiver is not guilty of receiving stolen property. * * *

* * * * * *

"Some statutes make it a criminal offense not only to receive stolen property, knowing it to have been stolen, but also to receive property obtained by other criminal acts, as by embezzlement, false pretenses, and the like, with knowledge that it has been so obtained. * * *"

Oregon has no such statute.

"shall be deemed guilty of larceny" in the embezzlement statute will not serve the purpose of enlarging the meaning of "stolen" either in the receiving stolen property statute or the statute defining the crime of possession of a stolen automobile.

I have demonstrated that "steal" in the larceny statute connotes a trespass and does not include embezzlement or other fraudulent ways of converting the property of another. No different meaning can properly be given that word as used in the receiving stolen property statute. It is an accepted and very sensible rule of statutory construction that, in the absence of anything in the statute clearly indicating a contrary intent, where the same word or phrase is used in different parts of a statute it will be presumed to be used in the same sense throughout, and where its meaning in one instance is clear this meaning will be attached to it elsewhere, *Schweigert v. Beneficial Life Ins. Co.*, 204 Or 294, 303, 282 P2d 621, and cases there cited. Now, the predecessors of ORS 164.310 (1), the larceny statute, and ORS 165.045, the receiving stolen property statute, and ORS 165.010, the embezzlement statute, were not only enacted at the same session of the Legislature, they were parts of the same statute, the Act of October 19, 1864; and it would, in my opinion, be nothing short of judicial legislation to adjudge that the words "stolen property" in ORS 165.045 include embezzled property. I think it would come as news to Oregon judges and to the profession, at least to those members of the profession having some familiarity with criminal procedure, to learn that a person could be convicted of receiving embezzled property under ORS 165.045.

Upon the second question, that of legislative intent,

the court cites *United States v. Turley*, 352 US 407, 77 S Ct 397, 1 L ed 2d 430, 56 ALR2d 1300, in which a divided court held that the word "stolen" in the National Motor Vehicle Theft Act (18 USC § 2312), commonly known as the Dyer Act, comprehends embezzlement. The Dyer Act makes it a criminal offense to transport in interstate commerce an automobile "knowing it to have been stolen." The problem facing the Supreme Court of the United States in that case was quite different from ours. As the opinion of the majority discloses, the laws of the several states differ on the question whether the crime of receiving stolen property includes embezzled property. Two of the early cases in the lower Federal courts had interpreted "stolen" as meaning statutory larceny as defined by the state in which the taking occurred. Later, three of the Circuits gave the word a broad interpretation and three a narrow interpretation. The Supreme Court was faced with the task of settling the question for the whole country and of choosing between conflicting views in the lower courts based in part on local statutes. The court found that "stolen" had no accepted common law meaning and, in view of the congressional legislative history to which reference was made, concluded that the Act required "an interpretation of 'stolen' which does not limit it to situations which at common law would be considered larceny." 352 US at 417.

The considerations which influenced the *Turley* decision are not present here. Though "stolen" may have no accepted common law meaning, it has in this State an established meaning, as we said of "embezzlement" in *State v. Tauscher*, supra, 227 Or at 10. That meaning has been stamped on the word by statute and judicial decision. No legislative history attend-

ing the enactment of ORS 481.990 (4) points to a different interpretation. The *Turley* case should not be regarded as persuasive authority in Oregon.

Precisely the same sort of argument that is made by the majority to support its conclusion as to legislative intent could as well be made with regard to the receiving stolen property statute in the Act of October 19, 1864; for the same Act created the crimes of embezzlement by servant, Deady, supra, § 552, and by bailee, id. § 553, and denounced obtaining money by false pretenses, id. § 559. Money or property obtained by any of these unlawful means would not be "stolen" money or property under the receiving stolen property statute. By the reasoning of the majority it would follow that, since no "law enforcement purpose" could be discerned for such a construction of these statutes, either that construction is wrong or the 1864 Legislative Assembly was feckless or whimsical. The logic which transmutes "stolen" into "embezzled" when the word is moved into the environment of the Motor Vehicle Act, somehow escapes me.

The truth is that the statute, of which ORS 481.990 (4) is a part, denounces certain specific, well defined, unlawful acts relating to motor vehicles. By it any person is declared to have committed a felony who: alters or forges a certificate of title or certificate of registration or uses such altered or forged certificate, ORS 481.990 (3); who knowingly makes a false statement of a material fact in an application for a certificate of title; who, with intent to prosecute or pass title to a motor vehicle which he knows or has reason to believe has been stolen, receives or transfers possession of such vehicle from or to another; who has in his possession any motor vehicle which he knows or has reason to believe has been stolen, ORS 481.990 (4).

By subsection (5)· any person who knowingly buys, sells, receives, disposes, conceals or has in his possession any motor vehicle whose manufacturer's serial number or other distinguishing number or identification mark has been removed, defaced, covered, altered or destroyed for the purpose of concealing or misrepresenting the identity of the vehicle, is guilty of a misdemeanor.

Thus, we are dealing with a meticulously drawn statute in which the Legislature, I would suppose, said all that it intended to say and used words of which it presumably understood the meaning. No sufficient reason has been, or, in my opinion, can be suggested for imputing to the Legislature an intention to use "stolen" in other than its accepted meaning in the law of this state.

No such reason is to be found in the assertion in the State's brief that "this case presents yet another example of the archiac quality of our criminal statutes". The Legislature, it must be presumed, when it enacted ORS 481.990 (4), knew of this "archaic quality," and also knew the history of our statutes defining larceny, embezzlement and receiving stolen property, and the pertinent decisions of this court. Had the Legislature intended to include embezzlement and other dishonest practices in addition to common law larceny in the stolen motor vehicle provision, it would have been a simple matter for it to give expression to that intention. This it did not do when it used merely the word "stolen."

I dissent.

I am authorized to state that the Chief Justice and Mr. Justice HOLMAN concur in this opinion.