Argued September 20, affirmed October 10, 1956

# STATE OF OREGON *v.* STORY
## 3C1 P. 2d 1043

*Mark V. Weatherford* argued the cause for appellant. On the briefs were Weatherford & Thompson, Albany.

*Walter W. Foster,* District Attorney for Polk County, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND, PERRY and McALLISTER, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Ethel Story, from a judgment of the circuit court, based upon a verdict, which adjudged her guilty of the crime of assault with a dangerous weapon and ordered her imprisonment for a term not exceeding three years.

The defendant presents three assignments of error. To facilitate their disposition we will take brief note of circumstances which led to the altercation preceding the defendant's indictment.

The defendant and one Frank Story, who was the complaining witness, were husband and wife prior to December 2, 1955. On that day a decree of divorce dissolved the marriage bonds. At the time of the trial the defendant was 56 years of age and Story 59. His occupation was that of a logger. The defendant had been married before and had a son by the prior

marriage. She was familiar with firearms and at the time of the altercation which led to the indictment carried a loaded revolver.

While the two were husband and wife they lived upon, and apparently owned, a farm in Polk county. November 3, 1955, at the time of the alleged assault, the farm had seemingly passed into the ownership of the defendant's son. The farm was improved with a dwelling house and several hundred feet distant from it there was a spring. A trail led through a brush-covered hillside from the house to the spring. The house was vacant.

November 3, 1955, Story went to the farm because, according to him, "The place was under litigation at that time and the trial for settlement came up the next day and I wanted to kind of look over to see what condition the place was in." While strolling over the place he observed an approaching automobile and thereupon repaired to a spot a hundred feet or so from the spring. The spot was off the trail and was partially concealed from view by bushes. He explained: "I didn't feel like I wanted to get in any argument with anybody  *  *  *  so I thought it would be best not to be seen hanging around the place."

The car which Story had seen, brought to the place the defendant, her mother and a man by the name of Henry Nendal, who was a friend of the defendant and occupied a room in her home. Before long the defendant and Nendal walked toward the spring on the trail which we have mentioned. The defendant's mother remained at the house. The defendant swore that as she approached the spring she saw an object some distance from the trail and partially concealed by the growth of bushes, which proved to be her ex-husband Story. When she realized that it was he, she

and Story were about forty feet apart. The defendant testified that she and her ex-husband had had many dissensions, that he had frequently threatened to kill her and that upon more than one occasion he had directed a bullet in her direction. Upon noticing him in the bushes above the trail she became fearful, so she claimed, that he would take her life.

The defendant stated that when she recognized that the partially concealed object was, in fact, Story, she made an outcry and that thereupon he proceeded to straighten up from a reclining position. At that time she did not realize, so she swore, that Nendal was alongside her. Although Story made no threats and was unarmed, the defendant maintained that he was about to take her life. In positive terms she repeated more than once that she was sure of his purpose and that it was to kill her in such a manner that his identity as the murderer would escape detection. She testified that after Story straightened up he slowly moved toward her and at that point, "I says, 'We can go to the house and talk this over, we don't have to do this, we don't have to do this'—I don't know how many times I repeated it—and he says 'I have nothing to say and if you have you better get it said.' " According to her, Story said nothing more but continued to approach her, "just a little bit creepy effect, coming very slowly." In the meantime, she had drawn her revolver from her pocket and held it in her hand. Story testified that when the defendant observed him in his place off the trail she spoke to him and requested him to come to the house for a talk. He replied, so he testified, that they could talk where they were. According to his version, he thereupon sat upon the ground and proceeded to roll a cigarette. While he was so engaged, "she looked at me possibly about ten

seconds, I should say, and she said, 'I'm going to kill you.' " Story estimated that at that moment the two were about fifteen feet apart. The defendant denied that Story had seated himself upon the ground, and contended that he continued to move slowly toward her. She claimed that he was about to kill her and that, since no one would know that he had been upon the premises, she yelled his name so that her mother and Nendal would know that Story was the murderer when her dead body was discovered. At that moment, according to her estimate, the two were "within, oh, six or eight or ten feet" of each other. She then pulled the trigger of her revolver. She expressed a willingness to admit firing more than once if the evidence so showed. It indicates that she fired more than once. One bullet tore the index finger and thumb of one of Story's hands. Either that bullet or another lodged in his body. Story swore that the bullet which struck his hand knocked the cigarette paper from it and at that moment "I jumped up." After the shots were fired Nendal led the defendant to the house. The foregoing suffices for present purposes.

■■ The first assignment of error follows:

"The defendant alleges that it was error to introduce, over objection, into evidence State's Exhibit 3 for identification, being a package of cigarette papers, for the reason that Frank Story, the prosecuting witness, never testified that he had lost any cigarette papers and never identified the papers found near the spring as being his own, and the condition of the papers does not indicate they had been recently lost."

The "package of cigarette papers" above mentioned is a small packet enclosed in pasteboard about one inch wide and two inches long which bears the trade-

mark "L L F". The little packet is an object familiar to all who roll their own. Story identified the cigarette paper which he had in his hand when the shot was fired as "Double L, F." A deputy sheriff, who visited the premises shortly after the shooting occurred, found the little packet at a place near the spot where Story said he was sitting when the shot struck his hand. The state claims that the packet fell from his lap when he arose after the first shot. There is no evidence that the package, which is the subject matter of this assignment of error, belonged to Story or that he had ever possessed it. Accordingly, we think that the packet was inadmissible. However, in *State v. Bailey,* decided August 22, 1956, we took note of ORS 138.230 and of the familiar rule upon which it is based—that error alone does not warrant a reversal. An erroneous ruling, in order to justify reversal, must have prejudiced the appellant. In that case we cited *Frangos v. Edmunds,* 179 Or 577, 173 P2d 596, for its holding that, in determining prejudice, a court looks to the entire record. We have read the entire record in this case and have been unable to find that the small packet had any effect whatever upon the outcome of the trial. Certainly, the defendant has not shown any basis for a belief that she was prejudiced by the admission into evidence of the little packet, and we have been unable to glean anything to that effect from our reading of the evidence. We, therefore, hold that, although the exhibit should not have been received, the defendant was not prejudiced thereby. We conclude that this assignment of error is lacking in merit.

■ The second assignment of error is based upon the trial judge's refusal to give to the jury an instruction upon the subject of self-defense which the defendant

requested. The requested instruction contained these sentences:

" * * * If such a course were required of her, the right of self-defense might prove unavailable because in the instance of consideration of effort to avoid the threatened injury, the said Frank Story might execute his felonious purposes. So, in this case, the defendant, being upon her own premises, or in a place where she had a right to be, and she was assaulted without provocation by the said Frank Story who was apparently seeking her life or intending to visit great bodily harm upon her person, she was not obliged to retreat or consider whether she could safely do so * * *."

The instructions which were given upon the subject of self-defense were fair and complete. They imparted to the jury, in language which was readily understandable, the principles of law that governed every phase of the defendant's actions that could have been deemed self-defense. The defendant took no exception to them.

■ We think that the above-quoted parts of the requested instruction were argumentative in part and constituted comment upon the evidence. Argumentative instructions should not be given. 88 CJS, Trial, p 877, § 336, and 53 Am Jur, Trail, p 439, § 552. Comment upon the evidence must be avoided. ORS 17.255, subd 1. No error is disclosed by this assignment of error.

■ The third, being the last, assignment of error is based upon another instruction requested by the defendant upon the subject of self-defense. It included the following passages:

"No person has a right to advance upon the land of another and administer a merciless castigation upon another who is lawfully there; * * *. A strong, powerful man, with his fists and body

> alone, is capable of visiting great physical injury upon his victim much his inferior in strength or endurance and he may even thus take her life. Instances are not wanting where such results have followed * * *."

Then the instruction continued in terms which were couched in the defendant's version of the altercation. We think that the requested instruction, if given, would have constituted comment within the purview of ORS 17.255. The requested instruction discloses no merit.

The judgment of conviction is sustained.