Argued September 11, reversed and remanded October 7, 1959

## STATE OF OREGON *v.* HARLEY

344 P. 2d 773

*M. M. Orona* argued the cause for appellant. On the brief were Morley, Thomas & Orona, Lebanon.

*Courtney R. Johns*, District Attorney, Albany, waived argument and submitted a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY and REDDING, Justices.

REDDING, J. (Pro Tempore)

This is an appeal by the defendant, Lee J. Harley, from a judgment of the Circuit Court for Linn County, based upon the verdict of a jury which found defendant guilty of the crime of forgery in violation of ORS 165.105.

Defendant is alleged to have executed and passed a forged check in the sum of $10 at a restaurant in Lebanon. The check purported to have been issued by one Leo Johnson as maker. Sometime after the issuance of said check, and shortly before these criminal proceedings were instituted against defendant, an undated Register check (No. 1245) of the Bank of Lebanon in the sum of $10, which purported to bear the signature of Leo Johnson, was received through the mail by Mrs. Jean Ray, the owner-operator of the restaurant. This Register check was referred to in the testimony as a personal money order, and for that reason will be so referred to in this opinion.

Mrs. Ray testified that this personal money order was received by her in payment of the fraudulent check. At the trial, evidence was introduced supporting the state's contention that defendant was in the restaurant late in the afternoon of the 8th day of April, 1958, and that the forged check in question was then executed and passed by him. The state's evidence showed that the Bank of Lebanon had no account under the name of Leo Johnson.

Defendant's principal assignment of error con-

cerns ·the receipt in evidence, over defendant's objection, of the personal money order hereinabove referred to.

District Attorney Courtney Johns offered himself as a witness for the state upon the trial and testified that he interviewed the defendant prior to the institution of criminal proceedings against him, and in such interview the defendant was confronted with the forged check which is the subject of defendant's prosecution. At the time Mr. Johns had in his office another check drawn on the Bank of Lebanon and signed by the defendant in his own proper name, which was known to be in defendant's handwriting. In the interview, the defendant admitted that he had written the check which was known to have been written and signed by him, but denied that he had written or passed the forged check. Mr. Johns pointed out certain similarities in the handwriting of the two checks and advised defendant that despite his denial he was going to have a comparison made of the signatures and handwriting on the two checks, thus implying that, depending upon the outcome of such comparison, he would determine whether or not a criminal charge would be filed against defendant.

One or two, or at most a few days after the defendant's interview with the district attorney, Jean Ray, owner and operator of the restaurant to which the fraudulent check had been given, received in the mail the personal money order referred to. Concerning said personal money order, Mrs. Ray testified as follows:

"Q  You say this came in the mail?
"A  Yes.
        [Envelope postmarked Lebanon, April 29, 1958, addressed to "Jean Rays Cafe"

marked as "State's Exhibit No. 4 for Identification"]

\* \* \*

"Q I asked you if you know what that Exhibit 4 is.

"A Yes, this is by Leo Johnson, evidently sending the money back for that check.

"Q Exhibit 4 is an envelope, isn't it?
"A Yes.

"Q What did that envelope contain?
"A That contained the money order."

Whereupon the personal money order and the envelope in which the same was mailed were offered and received in evidence, over defendant's objection that there was no proper foundation laid connecting these exhibits with defendant.

■ Had the state succeeded in establishing that the defendant did, in fact, purchase, sign and mail to Jean Ray such personal money order, the same would be relevant to show defendant's guilty knowledge and his effort to reimburse Jean Ray so she would not prosecute. *State v. Broadhurst*, 184 Or 178, 196 P2d 407; *State v. Henderson*, 182 Or 147, 184 P2d 392.

■ The state, however, failed to introduce any competent evidence tending to establish that the defendant purchased, signed or mailed the personal money order, and we think that under such circumstances, the receipt thereof in evidence was error. In answer to this error complained of by the defendant, the state argues that the defendant was not prejudiced by the introduction of the personal money order, asserting on this appeal that its introduction served to support the defendant's contention that there was a real "Leo Johnson." With reference to the contention thus advanced

by the state, it must be observed that the defendant upon trial made no such contention—at least he did not offer any testimony to that effect. Indeed, he did not take the stand, nor did he call any witnesses in his behalf. The contention of the state in this regard is not only refuted, but the vice of the receipt in evidence of such money order is rendered the more damaging to the defendant by the testimony of the handwriting expert called by the state, who, after testifying that he was unable to say that the writer of the forged check, whom he positively identified as the defendant, was the same person as the writer of the personal money order, went on to testify with reference thereto as follows:

"\* \* \* in examination of this document, I have noted the following, which indicates that it could very well be a slow-drawn writing, the shakiness in the lines which indicate a slow drawing of the letters."

By his testimony, the witness in effect declares that, while he is unable to say that the writing appearing on the personal money order is that of the defendant, he nevertheless implies that such writing was not genuine, but rather was a forgery.

The state urges that even though the ruling was erroneous, it was, in view of the record, not prejudicial. While this court in a number of criminal cases has resorted to Art VII, § 3, Constitution of Oregon, as authority for affirming judgments of conviction notwithstanding error, this power has been and should be exercised with utmost caution.

In determining whether the court in this case is warranted in affirming the judgment of conviction notwithstanding the error committed in admitting the per-

sonal money order, it will be necessary to refer to the record.

The witness, Eldon Evans, testified that he knew the defendant and observed him in Jean Ray's restaurant on the evening of April 8, 1958, the day on which the check was passed. Mrs. Shirley Bramsen, to whom the forged check was given, began work at the Jean Ray restaurant on April 7, 1958, and was the only witness present when the check was passed. In identifying the defendant as the person who passed the check, she testified on direct examination as follows:

"Q Do you know who that man was?
"A Well, to the best of my knowledge, I do.

"Q And who was it?
"A Well, Lee J. Harley.

"Q Had you ever seen him before that day?
"A No, I never had."

On cross-examination the same witness testified as follows:

"Q Now in view of this and in view of the very grave nature of the charge here, would you say you are quite certain that the defendant here is actually the man that appeared before you on the 8th day of April and passed that check?
"A I said to the best of my knowledge.

"Q You are not sure then, are you?
"A No, I am not positive.

"Q And you wouldn't want to say you are positive?
"A No, I wouldn't want to say I am positive. I said to the best of my knowledge, from the way he was dressed and his build and all.

"Q From a general impression?
"A From what I saw when I first saw him and his build and all is—

\* \* \*

"Q   Then your statement to this Court and jury is that you think this is the man but you are not sure?

"A   Yes."

Sergeant Clair H. Alderson and Captain Max L. Alford, of the Oregon State Police, both of whom qualified as experts, gave the only other testimony directly identifying the defendant as the author of the forged check in question, and, while both testified that they were positive that the forged check was written by the defendant, the opinion of each was based upon a comparison of the handwriting of the forged check with the handwriting of a single genuine specimen of defendant's handwriting consisting of a check on which there were written but four words in addition to defendant's signature, address and the Arabic numerals showing the date and amount of the check. It is generally recognized by authorities on the subject of questioned documents that the use of more than one genuine specimen for purposes of comparison with the questioned document tends strongly to reduce the risk of mistake in determining the true author of the questioned document. See *State v. Cahill*, 208 Or 538 [particularly that part of the dissenting opinion of Mr. Justice ROSSMAN appearing on pages 604 and 605], 293 P2d 169, 298 P2d 214. Albert S. Osborn, a generally recognized authority on questioned documents, states in his volume The Problem of Proof, page 44:

"The standards of comparison first provided in many disputed document cases are too few in number and not suitable in kind, and the finding of the suitable and adequate standards of comparison is one of the first steps to be taken in the preparation of a case of this kind."

The same volume, at page 52, adds:

"* * * What is especially desirable is that a

> sufficient quantity of writing and of succession of specimens *of the·same matter* be secured as a means of testing disguise."

In his other treatise, Questioned Documents, 2d ed, at page 27, Mr. Osborn says:

> "Several signatures should always be obtained, if possible, before any final decision is rendered, five signatures always constituting a more satisfactory basis for an opinion than one and ten being better than five."

It appearing from the record that the only testimony offered upon the trial, tending to directly identify the defendant as the person who wrote and issued the forged check, consisted of that of the two handwriting experts and Shirley Bramsen, to whom the check was given and who testified that she was not sure that the defendant was the person who gave her the forged check, we are unable to say in this case that a consideration of the evidence in its entirety conclusively shows that the error in the admission of the irrelevant evidence, received over defendant's objection, was not prejudicial. *State v. Story,* 208 Or 441, 301 P2d 1043; *State v. Thomson,* 203 Or 1, 278 P2d 142; *State v. Bouse,* 199 Or 676, 264 P2d 800; *State v. Kelliher,* 49 Or 77, 88 P 867; *State v. Hatcher,* 29 Or 309, 44 P 584.

For the error in admitting in evidence the personal money order, the judgment is reversed and the cause remanded for a new trial.