Argued September 12, affirmed November 7, 1962

# STATE OF OREGON *v.* OSTER
376 P. 2d 83

No. 13372.

*Elmer M. Amundson,* Salem, argued the cause and filed a brief for appellant.

*Gary D. Gortmaker,* Deputy District Attorney for Marion County, argued the cause for respondent. With him on the brief was Hattie J. Kremen, District Attorney for Marion County, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL and LUSK, Justices.

PERRY, J.

The defendant was convicted of the crime of burglary not in a dwelling, and appeals. He assigns as errors the refusal of the trial court to grant his motion for a directed verdict of acquittal; the admissions of evidence of another crime; the admission of certain fruits of the crime, which were not shown by direct testimony to have been in defendant's possession; and, that the instruction requiring corroboration of the testimony of an accomplice was erroneous.

The error assigned in the refusal to grant a directed verdict of acquittal is based upon the argument that there was not sufficient corroboration of the testimony

of the accomplice as to defendant's participation in the commission of the crime charged to sustain the verdict.

Our statute, ORS 136.550, which requires corroboration of an accomplice's testimony, was thoroughly analyzed and construed by the late Mr. Justice HARRIS in *State v. Brake,* 99 Or 310, 195 P 583, where it is said:

> "* * * The corroborating evidence must connect, or tend to connect, the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice testimony, tend to connect the defendant with the commission of the crime.
>
> "Evidence which relates exclusively to the commission of the crime or to the circumstances of the commission is not sufficient. The requirement of the statute is not satisfied by producing evidence showing that a crime was committed by some person or persons; but there must be evidence, independently of the accomplice testimony, tending to show that the defendant was *connected* with the commission of the crime.
>
> "* * * * *
>
> "The corroborative evidence need not be direct evidence; but the statute is satisfied even though the evidence is entirely circumstantial."

This rule has been applied in numerous decisions of this court. See *State v. Reynolds,* 160 Or 445, 86 P2d 413.

■ The heart of the rule is simply that there must be evidence, independent of the evidence of the accomplice, which would lead reasonable minds to a belief that the defendant criminally participated in the crime charged.

Since we may not rely upon the testimony of the accomplice, though his testimony would fully support a verdict of guilty were it not for the requirements of ORS 136.550, we will set forth the evidence, independent of Walling's testimony.

The Mortarless Block Company building, which was burglarized, was entered some time between Saturday noon, April 15, 1961, and 1:30 or 2 p.m. April 16. There was taken therefrom a check protector, a binder in which blank checks were kept, numerous blank customer checks issued by The Commercial Bank of Salem, and a rubber stamp with the words "Mortarless Block Company" thereon, and beneath these words, the numbers "64-102-02." The Block Company had used this stamp with its name and the numbers on checks it issued and proposed to issue. The numbers were used by The Commercial Bank of Salem for bookkeeping purposes in the identification of its account with its customer, the Mortarless Block Company.

Other facts, independent of the testimony of the accomplice, Kendall C. Walling, are these: The defendant Oster, the accomplice Walling, one Mrs. Josette Forkner, and Miss Jean Elders, were together at a restaurant and cocktail lounge in Polk County, known as the Y Cafe, Saturday night, April 15, until 2 a.m. of April 16. Sometime after 2 a.m. of the 16th they left the cafe. While the parties were still in the cafe lounge, Walling was heard to tell the defendant that he had to stop at the Mortarless Block Company, where he was employed, on his way home to pick up some work he was supposed to have finished Saturday. He also asked defendant not to let him forget it.

That same day, in the evening, the defendant, Walling and Josette Forkner were again seen together at the Y Cafe. While they were together on that eve-

ning, Walling presented to the proprietor of the cafe a check payable to himself, drawn on a customer's check furnished by The Commercial Bank of Salem, and obtained funds thereon. The check, purporting to have been drawn by some one having the authority of the Mortarless Block Company, had stamped thereon the name of the Block Company and the account number of the company by use of the company's rubber stamp. The check protector taken in the burglary also had been used in filling in the amount. This check was a forgery.

Robert Bluemmel, a deputy sheriff of Marion County, testified that he had gone to the scene of the burglary on Sunday p.m. April 16, and after ascertaining the names of employees, had started a search for Walling; that while searching for this individual, he and a deputy sheriff from Polk County noticed Walling's car parked at the Y Cafe. The two officers entered the cafe and sat down at the counter. While they were seated, the defendant, Walling, Josette Forkner, and one Marilyn Jean Halsey, left the cafe, going first to a car, identified by Officer Bluemmel as belonging to Walling, and then left in another. About 30 minutes later the car and its occupants were stopped, and Walling was arrested. Later, the defendant and Josette Forkner were taken to the city hall.

The check protector and check register were found in the apartment of Jean Elders, who had been a member of the party until 2 a.m. Sunday morning. A number of checks were found in the ladies toilet in the city hall. These were forged checks similar in every respect to the one forged and uttered by Walling to the restaurant owner, except that the name of the payee was Joe S. Parey.

It was also established that in some manner the

defendant had come into possession of the military discharge papers of one Joseph Stanley Carey; that the "C" in Carey on the discharge papers had been altered to a "P." An employe of the Oregon Liquor Control Commission identified the defendant as the man who presented the altered discharge papers, and on the basis of this presentation, received a liquor purchasing permit under the assumed name of Joe S. Parey.

■■ The mere fact that the accomplice and defendant were friendly and were seen together, both before and after the commission of the burglary, though not in the vicinity of the place burglarized, is some evidence of opportunity to have taken part in the crime, but this in itself is not sufficient. *State v. Brake,* supra; and *State v. Scott,* 28 Or 331, 42 P 1. However, when the evidence is such that a reasonable conclusion may be reached that defendant was in possession of and expected to share in the fruits of the crime, this showing, together with opportunity, is sufficient. *State v. Brake,* supra.

The defendant may argue that there is no evidence that he ever had possession of the checks or expected to share in the fruits of the crime, but an analysis of the facts above set out discloses that reasonable minds could reach the conclusion that he did have possession of the stolen property and expected to share in the fruits of the crime.

It is clear that the taking of the articles listed from the building was not for the monetary value of the articles taken, but for the purpose of using them to obtain moneys through forgery.

While the record discloses that the checks upon which appeared the name Joe S. Parey as payee were found in the ladies toilet in the jail, and had been placed there by Josette Forkner at the time she and

defendant were arrested, the only reasonable conclusion which may be drawn is that they were so disposed of at the request of the defendant, in the hope that they would not be discovered. These checks could not be uttered by Josette Forkner. The payee was the defendant, who could hope to negotiate them by use of the identification supplied by the liquor permit and the altered discharge papers.

The defendant's contention that evidence of the commission of another crime was error is without merit.

The state, in the course of the trial, established that defendant had come into possession of (how this was accomplished is not set forth) the military discharge of one Joe Stanley Carey. The "C" in Carey had been changed to a "P," so that it read "Joe Stanley Parey," and, as altered, had been used by defendant to obtain a liquor license.

It is a well established principle of law that the rule excluding evidence of other crimes is not applicable when such evidence is relevant in establishing the particular crime charged in another criminal proceeding. *State v. Jensen*, 209 Or 239, 289 P2d 687, 296 P2d 618; *State v. Dennis*, 177 Or 73, 159 P2d 838; 161 P2d 670.

The defendant's other contentions are also without merit.

We have carefully examined the instruction of the court requiring corroboration of the testimony of an accomplice to sustain a verdict of guilty and find no error therein.

The judgment is affirmed.