Argued and submitted on review March 2, affirmed
April 22, 1970

STATE OF OREGON, *Respondent, v.*
DANIEL ALLEN McLEAN,
*Appellant.*
468 P. 2d 521

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Jacob B. Tanzer,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

TONGUE, J.

Defendant appeals from conviction of the crime of assault and battery by means of force likely to produce great bodily injury, under ORS 163.255. The crime took place while defendant was being held in Rocky Butte jail in Portland while awaiting prosecution on another charge. The victim of the assault was also an inmate in the jail.

Defendant's conviction was affirmed by the Court of Appeals. 1 Or App 147, 459 P2d 559 (1969). We granted defendant's petition for review because of the serious nature of the question raised by defendant's

first assignment of error. That question may be stated as follows:

Was it error for the trial court to refuse to allow defendant to testify that he had been acquitted of the charge for which he was being held in jail at the time of the assault and, if so, was any such error prejudicial, so as to require reversal of the conviction?

Because of the sordid nature of the offense, the evidence will be summarized as briefly as possible. The victim of the assault, who will remain unnamed, upon transfer from Rocky Butte to the Oregon State Correctional Institution shortly after the assault, was examined and found to have numerous "contusions and abrasions" on various parts of his body. He was then interviewed by a detective, who observed about 20 scars and abrasions, some not yet healed or "scabbed over", and each about $\frac{3}{8}$ of an inch in diameter. These were on top of his head, on his chin, right elbow, and abdominal area and on the backs of his arms and legs.

He reported to the detective that after being held as an inmate of Rocky Butte jail for six months on a charge of taking and using an automobile without the owner's permission he was placed in a "tank" with some 15 other inmates; that the defendant and three other men then approached him and demanded that he go to talk with them in the back of the "tank"; that he was then beaten around the face and arms and was forced to submit to an act of sodomy after defendant and two others "put out" lighted cigarettes on his head and other parts of his body; that the next day defendant and two others repeated the same thing three or four times and also forced him to drink out of a "butt can", among other indignities; that he complained unsuccessfully to a guard and was then beaten again, and

that on the next night he complained again and was finally removed from the "tank". During the interview he identified defendant and the others from a series of 22 photographs, including various inmates of that "tank".

The detective testified that he interviewed the victim on two separate occasions and found no serious discrepancies in his story. The detective also testified, on cross-examination, that the victim submitted to a polygraph test, which he "passed." Some other inmates of the tank were also apparently interviewed.

The testimony offered on trial by the state consisted of the testimony by the OCI hospital technician, the detective and the victim of the assault, all to the same effect, corroborated by the testimony of one other inmate of the tank, an ex-convict, who testified that he saw defendant and the others jerk the victim off his bunk and drag him to the back of the "tank" and also saw the defendant and two others "putting out cigarettes" on his face and arms and force him to drink from the "butt can", among other things; that the same individuals (including defendant) also hit him again the second day and "started on him again" after he tried to get out of the tank, and that defendant also forced him to do another indecent act on threat of "knocking his head off".

The defendant, testifying on his own behalf, denied any assault or other acts of misconduct. The defense also offered the testimony of four other inmates of the "tank", including one indicted for the same assault and an admitted friend of defendant. They all corroborated defendant's story that neither he, nor anyone else, had hit the complaining witness or burned him with cigarettes. None of them, however, offered any

explanation for the cigarette burns on his body at the time of his transfer from Rocky Butte, other than to deny that they saw any such burns.

The state impeached all four of defendant's witnesses (but not the defendant), by proof of the record of their previous convictions. One of defendant's witnesses was also impeached by a detective, who testified that the witness had been interviewed by him in the course of his investigation and had told him that defendant and three other men had, in fact, "corralled" and abused the complaining witness by hitting and threatening him and by committing sex acts.

In arriving at its verdict of "guilty", the jury obviously chose to disbelieve defendant and his witnesses and to believe the testimony of the complaining witness, as corroborated by the one other inmate (who the jury probably found to be the only other inmate willing to tell the truth), as well as by the testimony of the investigating detective and the physical evidence of the numerous cigarette burns upon the body of the victim of the assaults.

*The Trial Court's Refusal to Permit Testimony of Defendant's Acquittal of the Charge on Which He was Being Held.*

When defendant was called as a witness in his own behalf he testified that at the time of the incident in question he was being held in Rocky Butte jail on a charge of "taking and using" an automobile and that he was later released on his own recognizance. His attorney then asked "What was the disposition of that case?" An objection to that question was then sustained.

It is not contended that the refusal to permit the answer to this question constituted constitutional

error. It is contended, however, that the trial judge erred in that ruling and that this was prejudicial error, requiring reversal of the conviction.

In support of this contention defendant argues that although the state could properly show that defendant was in jail at the time of the crime, the result of this ruling was to lead the jury "to infer that the defendant had been convicted of or was charged with a crime"; that since the jury was instructed that "some of the witnesses have formerly been convicted of a crime" and could thus consider this in determining the credibility "of any such witness", it follows, by "analogy", that defendant "should have been allowed to show the disposition of that independent crime", so as to remove "the false albatross of guilt that hung about the defendant's neck".

Defendant further contends that the error in refusing to permit him to do so was prejudicial error, requiring reversal, under the following "test", as stated in *State v. Hatcher*, 29 Or 309, 313, 44 P 584 (1896):

> "* * * Unless the record conclusively shows that the error in the admission of incompetent evidence was not prejudicial to the party objecting, the judgment should be reversed."

These contentions were rejected by the Court of Appeals holding that it was error for the trial judge to refuse to permit defendant to show the disposition of the prior charge, but that "only such error as is found to have been prejudicial to a substantial right of the defendant" will justify a reversal (citing ORS 138.230; Amended Art VII, § 3, Oregon Constitution); that "in making this determination we look to the entire record" (citing cases); that "the crime of 'tak-

ing and using an automobile' is not such as would likely have made the jury more readily believe the defendant committed the crime of assault and battery, particularly in light of the sordid facts involved here", and that "the defendant was not prejudiced by the ruling of the trial judge" (1 Or App 147, 459 P2d 559 (1969)).

*The Exclusion of Such Testimony as Possible Error.*

First, to discuss the question whether it was error to exclude evidence of the disposition of the "taking and using" charge and the "analogy" claimed by defendant between such evidence and evidence that a defendant has committed other crimes.

■ It is elementary, of course, that evidence that a criminal defendant has committed other crimes is ordinarily inadmissible, subject, however, to various exceptions. *State v. Brown,* 231 Or 297, 300, 372 P2d 779 (1962). It must also be kept in mind that such evidence may be offered for two purposes: 1) as substantive evidence, or 2) for purposes of impeachment.

■ When offered as substantive evidence, an exception is recognized to the rule excluding evidence of other crimes when such evidence is relevant in establishing the particular crime charged in another criminal proceeding. *State v. Oster,* 232 Or 389, 395, 376 P2d 83 (1962). Thus, defendant cites *Demons v. State,* 17 Ga App 480, 87 SE 690 (1916), in which it was held that there was no error in receiving testimony that defendant was serving a sentence on a chain gang, when offered for the sole purpose of establishing his whereabouts at the time of a separate crime which was the subject of the charge against him in that case.

In such a case, the evidence is offered not to im-

peach the credibility of defendant, but as substantive evidence, relevant to an issue in the case. Thus, it does not necessarily follow that the defendant in such a case would have had the right to offer as relevant and substantive evidence the fact that he had been pardoned or otherwise exonerated of the crime for which he was then being held in jail and defendant has not cited any such case. Indeed, it may be contended that in such a case the probative weight of such evidence, if any, would be so slight as to fall within the discretion of the trial judge to admit or exclude. Cf. McCormick on Evidence, 319-21, § 152, and *Clement v. Cummings,* 212 Or 161, 167, 317 P2d 579 (1957).

When, however, evidence of the commission of another crime is offered not as substantive evidence, but for the purpose of impeaching the credibility of the defendant as a witness, a different problem is presented. But even in such cases, the courts are not in entire agreement even though, when offered for purposes of impeachment, the evidence must ordinarily be limited to proof of the *conviction* of a crime, rather than evidence of arrest or prosecution for a crime.

Thus, some courts exclude any testimony by the impeached witness by way of explanation, mitigation, or denial of guilt. Other courts, on the contrary, permit the witness to make a brief statement in explanation, mitigation or denial of guilt. Still other courts hold that it is within the discretion of the trial judge to permit or exclude such a statement. McCormick on Evidence 93, § 43 and cases cited therein. See also 166 ALR 211.

In *Lucas v. Kaylor,* 136 Or 541, 546, 299 P 297 (1931), this question was discussed, but not decided by this court.

In one of the leading cases in support of the rule under which the admission or exclusion of such statements would be left to the discretion of the trial judge, *United States v. Boyer,* 80 App DC 202, 150 F2d 595, 596, 166 ALR 209, the court stated (at p 211):

"Just where to draw the line, in order to avoid both unfairness to the witness and confusion of issues, is a question which must frequently arise. The correct rule in such cases, we think, is to recognize a wide discretion in the trial judge. He observes the conduct of counsel, the reaction of the witness under examination, and the resulting effect upon the jury. In other words, he is aware as no appellate court can be of the courtroom psychology and can best determine whether particular testimony should or should not be received."

In this case the state did not offer evidence that defendant had been convicted of any crime and no evidence was offered by the state for the purpose of impeaching defendant's credibility. On the contrary, at the time that defendant sought to state the disposition of the charge on which he was being held in jail, evidence had been offered not only by the state, but also by four previous defense witnesses that defendant was an inmate of Rocky Butte jail at the time of the assault of which he was charged.

Under these circumstances, and since defendant was permitted to show that the charge on which he was held was that of "taking and using" an automobile and that he was later released on his own recognizance, it may be that no error was committed in refusing to permit defendant to testify further that he was acquitted of that charge, at least if the correct rule to be applied in such cases is to leave such questions to the discretion of the trial court.

■ In any event, and while we believe that it would

have been better practice for the trial judge to permit defendant to so testify, we hold that any such error was not prejudicial under the circumstances of this case and thus was not ground for reversal of defendant's conviction, for reasons which we shall next set forth.

*The Exclusion of Such Testimony Was Not Prejudicial Error.*

As previously stated, defendant contends that any error in the exclusion of such testimony requires a reversal of his conviction. The authority relied upon by defendant is the proposition that "error in the *admission* of incompetent evidence" requires the reversal of a conviction unless the record "conclusively shows" that such error was not prejudicial to the defendant, quoting from *State v. Hatcher,* 29 Or 309, 313, 44 P 584 (1896).

First, it is to be noted that the rule of *Hatcher* has been cited with approval by this court in more recent cases. *State v. Thomson,* 203 Or 1, 15, 278 P2d 142 (1954); *State v. Harley,* 218 Or 263, 270, 344 P2d 773 (1959); and *State v. Gardner,* 225 Or 376, 383, 358 P2d 557 (1961). In all of these cases the rule was applied, in accordance with its terms, to the improper *admission* of evidence claimed to be prejudicial, rather than to the improper *exclusion* of evidence.

It may be contended, with some plausibility, that it would be far more difficult to demonstrate (if demonstration be required) that the *admission* of improper evidence did not prejudice a criminal defendant, than to demonstrate that such a defendant was not prejudiced by the *exclusion* of some evidence that might have been admissible, as in this case. This might well depend, of course, on the nature of such evidence.

But, aside from such a distinction, it is significant to note that in *Hatcher, Thomson* and *Gardner* no recognition was given to either the Oregon "harmless error" statute (ORS 138.230, first adopted in 1864, D. ch 23 § 246) or to the provisions of Art VII (Amended), § 3 of the Constitution of Oregon, as adopted in 1910.

ORS 138.230 provides that:

> "After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to *technical errors,* defects or exceptions which do not affect the substantial rights of the parties." (Emphasis added.)

Art VII (Amended), § 3, provides, among other things, that:

> "If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding *any error* committed during the trial; * * *." (Emphasis added.)

In *State v. Harley,* however, this court recognized (at p 267) that under Art VII, § 3, it had the power to affirm convictions notwithstanding error. In *Harley,* however, this court quite properly declined to exercise that power in a case in which the receipt of the improperly admitted evidence was clearly prejudicial to the defendant.[①] Similarly, in *State v. Gardner,* al-

---

[①] In State v. Harley defendant was charged with forgery. The state offered in evidence a money order for the amount of the forged check, without evidence that defendant wrote the money order, and then had a handwriting expert testify that it was written by the same person who wrote the forged check. (See 218 Or at 266-67, 344 P2d at 775).

though no express reference was made to Art VII, § 3, the case was one based entirely on circumstantial evidence and the receipt of the improperly received evidence was also clearly prejudicial.[2] *State v. Thomson* may also be distinguished on much the same grounds.[3]

In numerous cases this court has relied upon Art. VII, § 3, and ORS 138.230 to affirm convictions in criminal cases without reference to the rule as stated in *Hatcher* and without attempting to demonstrate "conclusively" that the defendant was not prejudiced by the admission of incompetent evidence.[4] Indeed, the very statement of such a rule reveals its fatal weakness because, as a practical and realistic matter, it can never be demonstrated "conclusively" in any case that a defendant was not prejudiced in some manner and in some degree by the receipt of evidence that should have been excluded.

---

[2] In State v. Gardner defendant was charged with burglary. The state offered testimony of a witness that, at the request of defendant, she attempted to cash a check identified as one stolen in the burglary and signed by defendant and that the witness had been convicted of the separate crime of attempting to pass a forged check. (See 225 Or at 380, 358 P2d at 559.)

[3] In State v. Thomson defendant was charged with assault with intent to kill. The state offered evidence to show that defendant had offered to plead guilty to an information charging the same offense, that plea having been later withdrawn, based upon a motion and affidavit that defendant was not then represented by counsel, but had been subjected to long questioning by police and had not been informed of the elements necessary to constitute the crime of assault with intent to kill. (See 203 Or at 4, 278 P2d at 143-144.)

[4] Among other such cases, see: State v. Herrera, 236 Or 1, 386 P2d 448 (1963); State v. Story, 208 Or 441, 301 P2d 1043 (1956); State v. Cahill, 208 Or 538, 293 P2d 169 (1956); State v. Cameron, 165 Or 176, 106 P2d 563 (1940); State v. Coleman, 119 Or 430, 249 P 1049 (1926); State v. Garrett, 71 Or 298, 141 P 1123 (1914).

Accordingly, we now reject the rule of *State v. Hatcher*.

In 1864, the legislature of Oregon directed this court to "give judgment, without regard to  *  *  * technical errors, defects or exceptions which do not affect the substantial rights of the parties" (1864, D. ch 23, § 246; now ORS 138.230).

In 1910 the people of Oregon, by the adoption of an amendment to the Constitution of Oregon as an initiative measure, directed that if this court shall be of the opinion "after consideration of all the matters thus submitted (on appeal), that the judgment of the court appealed from was such as should have been rendered in the case, such judgment *shall* be affirmed, notwithstanding *any* error committed during the trial" (Art VII (Amended) § 3, emphasis added).

In the exercise of the powers thus conferred upon this court we have affirmed verdicts and judgments in a number of criminal cases in which evidence was improperly received without regard to whether the resulting error was "technical" or otherwise so unsubstantial that this court, upon a consideration of the entire record, was able to conclude that the verdict and judgment was "such as should have been rendered in the case."[9]

In view of "the troubled times in which we live today," this court has no reason to believe that the legislature or the people of Oregon now have any desire that this court should hesitate to exercise the powers conferred by these mandates. Indeed, the purpose to be served by these statutory and constitutional provisions is now of particular importance, in view of the unfortunately increasing technicalities of mod-

---

[9] See cases cited above under n 4.

ern criminal law which make it most difficult for a judge today to conduct the trial of a criminal case of any considerable importance, complexity and length without error of some kind or degree.

We are not unmindful that in this, as in all criminal cases, our decision must not conflict with any overriding mandate by the Supreme Court of the United States. Any such concern, however, would appear to be put at rest by the decision of that court in *Chapman v. California*, 386 US 18, 87 S Ct 824, 17 L ed 2d 705 (1967).

In *Chapman* it was held (at p 24) in an opinion by Justice Black, that when a federal constitutional right is involved, the court must be able to declare a belief that an error is harmless "beyond a reasonable doubt", rather than to "conclusively demonstrate" that the error was harmless, as in *Hatcher*. The court also stated (at p 21) that:

> "The application of a state harmless-error rule is, of course, a state question where it involves only errors of state procedure or state law."

The court also said (at p 22) with regard to rules relating to harmless error, that:

> "All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have *little, if any, likelihood* of having changed the result of the trial." (Emphasis added.)

Indeed, there has long been a federal "harmless error" statute, and one not limited to "technical errors". Thus, 28 USC, § 2111 provides:

> "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard

to errors or defects which do not affect the substantial rights of the parties."

It was held by the Supreme Court of the United States in *Berger v. United States,* 295 US 78, at 82, 55 S Ct 629, 79 L ed 1314 (1935), with reference to this statute, that:

"Evidently Congress intended by the amendment to § 269 to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless."

To the same effect, Rule 52(a) of the Federal Rules of Criminal Procedure now provides:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Thus, by statute and rule of court, the federal courts, including the Supreme Court of the United States, recognize and apply a rule of "harmless error" almost identical with that required in Oregon by statute and by constitutional provision.

This court is fully aware of its duty to continue to protect the constitutional right of all persons accused of crime to a fair trial, as well as the rule that any error in a criminal trial is presumed to be prejudicial. We are also fully aware of the grave responsibility involved in the exercise of the powers conferred upon this court by ORS 138.230 and Art VII (Amended) § 3 of the Constitution of Oregon.

■ We hold, however, in accordance with the terms and purposes of that statute and the constitutional

provision, that in a case in which, despite some conflict in the testimony, there is substantial and convincing evidence of guilt and the error, if any, was either so technical in nature or so unsubstantial that this court can affirmatively find, as a practical matter, that there was "little, if any, likelihood of having changed the result of the trial",[*] this court may then, in its discretion, exercise its power to affirm the verdict and judgment of the trial court, notwithstanding the existence of such error.

In our best judgment this is such a case. Although defendant and four jailmates denied that either defendant or anyone else burned the complaining witness with cigarettes, they made no attempt to explain the presence of numerous cigarette burns on his body, of which there was no dispute. Thus, the truth of the testimony of the victim of the assault was strongly corroborated by that physical evidence, as well as by the testimony of another inmate and that of the detective.

In addition, we are convinced, as was the Court of Appeals, that there was little, if any, likelihood that under the facts and circumstances of this case it would have made any difference in the verdict of the jury if defendant had been permitted to testify not only that he was being held in jail on a charge of "taking and using" an automobile and was later released on his own recognizance (as he was permitted to do), but also that he was later acquitted of that charge.

Indeed, defendant contends on this appeal no more than that from the fact that he was in Rocky Butte jail at the time of the crime charged the jury could

---

[*] See Chapman v. California, 386 US 18 at 22, 87 S Ct 824, 17 L ed 2d 705 (1967), as also quoted from above.

infer *either* "that the defendant had been convicted *or* was charged with a crime." Defendant was allowed to testify that he was in jail under charge of a crime and was later released on his own recognizance. Thus, it was clear that he was not in jail because of a crime for which he had been previously convicted. Furthermore, it is common knowledge that many persons are held in jail pending trial for crimes for which they may later be acquitted or released for other reasons.

In addition, although the state offered copies of the record of the previous conviction of defendant's four corroborating witnesses, no such record of any conviction of defendant was offered by the state. Also, the instruction given by the court was that "*some* of the *witnesses* have formerly been convicted of a crime" and that the jury could consider that fact in determining the credibility of "any such witnesses."

Thus, it was far more likely that the jury would infer that defendant had *not* been previously convicted of a crime than the contrary. This is not to say that the erroneous exclusion of evidence offered by a criminal defendant may not require reversal when offered to rebut an unfavorable inference from evidence offered by the state when such an inference was the natural and probable inference to be drawn from such evidence. When, however, the sole purpose of the erroneously excluded evidence was to rebut some *possible* unfavorable inference from some testimony offered by the state, as in this case, such a case, depending on its facts, may well be one in which this court should exercise the power conferred upon it to affirm the verdict and judgment despite error in the exclusion of such evidence.

Finally, the crime of "taking and using" an auto-

mobile was such a minor offense, compared with the much more serious and sordid offense of which there was such substantial evidence to prove, that even if defendant had been permitted to testify that he had been acquitted of that charge, we firmly believe that it would have made no difference whatever in the verdict of the jury in this case.

For all of these reasons, we hold that any error in the exclusion of defendant's testimony that he was acquitted of the charge of "taking and using" an automobile was not prejudicial to defendant.

By a second assignment of error defendant contends that the trial court improperly limited the disclosure to defendant of the state's investigation reports to portions relating to statements of witnesses called by the state and did not disclose portions of such reports relating to interviews with other witnesses, including a witness called by the defendant who was impeached by the use of such a statement.

■ For the reasons stated by the Court of Appeals (1 Or App 147, 459 P2d 559), there was no error in limiting the disclosure to defendant's attorney of those portions of the state's investigation report relating to the statements of witnesses called by the state, under the rule previously approved by this court in *State v. Foster,* 242 Or 101, 103, 407 P2d 901 (1965).

Affirmed.

McALLISTER, J., concurring in the result.

I agree with the Court of Appeals that the trial court erred in refusing to let defendant testify that he had been acquitted of the charge on which he was being held in Rocky Butte Jail. *State v. Leahy,* 243 Iowa 959, 54 NW2d 447 (1952); *Nolan v. State,* 213

Md 298, 131 A2d 851 (1957). I would affirm the judgment under the authority vested in this court by Article VII, Section 3, of the Oregon Constitution. *State v. Cahill,* 208 Or 538, 575-583, 293 P2d 169, 298 P2d 214 (1956).

I concur only in the result of the majority opinion.

DENECKE, J., specially concurring.

I concur in the reasoning of the majority opinion; however, I would dismiss the proceeding upon the ground that we should not have granted the petition for review.

The principal ground for the petition for review was the contention that the Court of Appeals erred in holding that the trial court's error was not prejudicial. The facts involved in the alleged error were unusual and it is doubtful whether an issue similar to this will arise again. Under these circumstances I am of the opinion, regardless of whether we were of the opinion that the Court of Appeals erred, the question is not one of such substance that we should have granted the petition for review. Even if we are of the opinion error has been committed, usually this alone should not be grounds for granting review; we should grant review only if the error raises an issue of importance beyond the immediate case. See note to Rule 47-A, Supreme Court Rules of Procedure.