Argued July 15, affirmed August 26, reconsideration denied
October 2, petition for review allowed November 13, 1974

STATE OF OREGON, *Respondent, v.* EMMA
MAE SMITH (No. C 73-10-3319), *Appellant.*

525 P2d 213

*J. Marvin Kuhn,* Deputy Public Defender, Salem,
argued the cause for appellant. With him on the brief
was Gary D. Babcock, Public Defender, Salem.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and TANZER, Judges.

LANGTRY, J.

The defendant appeals from conviction of first degree robbery of one Carson Jones. ORS 164.415. The defendant's contentions are that it was error to receive evidence of another similar crime by defendant and her companions on the same night, and that, having received the evidence, it was error to deny her the opportunity to show that she had been acquitted of the other offense. Facts testified to that are essential to an understanding of these contentions are: At about 5:45 p.m. on October 1, 1973 the defendant and two young women companions picked up a hitchhiker, Mr. Jones, in Portland. After stopping on a dead-end road, defendant pulled a knife and threatened Jones with it; Carla, one of the other girls, pointed at him what appeared to be a gun from under her coat; and Doreen, the third of the girls, told him to disrobe and hand over his money. Jones complied and left the car. He ran to a nearby house and, having noted the license number of the car, called the police.

At about 6:30 p.m. on the same day, the three women picked up three other hitchhikers, Jody, Linda and Tina, all 14 years of age. Doreen, the driver, turned into a parking lot and they proceeded to take the younger girls' possessions by use of threats and a knife. Jody testified that the defendant took her

earrings. Shortly thereafter, Tina escaped from the car, which infuriated the aggressors. As Doreen was driving away, Carla, brandishing a pocketknife, accused Jody of helping Tina to escape and threatened to kill her. After a struggle, Jody was cut on her forehead, arm and neck and suffered a broken nose. Jody testified that defendant told Linda to "lay [sic] down in the seat or she would get killed." Both Jones and Jody testified to the robbers' sniffing glue.

Doreen drove the car with the remaining victims to Pioneer Park near Sandy, Oregon, and told Jody and Linda to remove their clothes, step out of the car and lie down on the ground. After Doreen had driven away, the girls ran to a nearby trailer house and a resident thereof drove them to the Sandy police station.

Although defendant admitted she was in the car when Jones was picked up, she denied making any threats or asking for any money. She testified that she was holding a knife but was attempting to hide it when Carla took it from her hands. Defendant also admitted being present when the three girls were picked up but denied any participation in the actual robbery. She admitted asking to see Jody's earrings but claimed they were given to her.

The court allowed evidence of the second robbery, and later ruled that defendant could not testify to having been acquitted on a previous trial of it. The court's instruction to the jury at each respective point was:

> "Ladies and gentlemen, in connection with the last evidence from the last witness, the young lady, I want to point out to you that evidence tending to show the commission of another offense by the defendant and her conferates [sic], if any, may be

considered by you in this case if you find that such other offense was similar in nature or method, unusual or unique in execution and close to the date of the offense alleged in this case. If you so find, then you may consider that other evidence of that other offense solely in this case in connection with your determination of whether this defendant was present at the time and place of the offense here charged, and whether in connection with your determination of whether she and her confederates had a common design or purpose to commit the offense with which she is charged in this case. Those are the purposes for which such evidence may be considered by you in this case."

"Ladies and Gentlemen of the Jury, any reference to another trial and a different case is improper. Any reference to the outcome of another trial in a different case is irrelevant to the questions of fact which are to be decided by you in this case. It will be your responsibility in this case to decide this case upon the law as I instruct you and upon the evidence which is produced in this case."

■ Defendant first contends that, where evidence of other offenses is competent under one of the exceptions to the rule that evidence of other offenses is generally inadmissible, it is rendered inadmissible where defendant was tried and acquitted of the other offense. Defendant concedes that the weight of authority in other jurisdictions is contrary to her position. Annotation, 86 ALR2d 1132, 1135 (1962) and ALR2d Later Case Service. However, she urges the court to adopt the reasoning of the Arizona Supreme Court in *State v. Little,* 87 Ariz 295, 350 P2d 756, 86 ALR2d 1120 (1960), which represents the minority rule.

In *Little* the court based its decision on "broad grounds," saying:

"* * * [A]dmissibility depends, rather, on a

balancing of the various effects of the admission of such evidence, considered in the light of recognized rules of law governing the administration of criminal justice.

"The fact of an acquittal, we feel, when added to the tendency of such evidence to prove the defendant's bad character and criminal propensities, lowers the scale to the side of inadmissibility of such evidence * * *.

"* * * [T]o the extent that evidence of the prior offense tends to prove the instant offense, the defendant is required, in order to avoid conviction and punishment for the instant offense, to refute, for the second time, his commission of the prior offense. A verdict of acquittal should relieve the defendant from having to answer again, at the price of conviction for that crime or another, evidence which amounts to a charge of a crime of which he has been acquitted." 87 Ariz at 307.

We held in *State v. Fuston,* 7 Or App 436, 439, 490 P2d 1024 (1971), Sup Ct *review denied* (1972):

"Where the robbery routine and method of operation is so unusual and distinctive as to be like a signature, evidence thereof is admissible. McCormick, Evidence 322, 328, § 157 (3) (1954).

"* * * [I]t was competent for the state to show similar acts by defendant and his confederate about the same time, in which the same routine and same method of operation under the same circumstances were used."

*See also State v. Woolard,* 2 Or App 446, 467 P2d 652, Sup Ct *review denied* (1970), *cert denied* 406 US 972 (1972); and *State v. Moore,* 1 Or App 394, 460 P2d 866, 463 P2d 373 (1969), Sup Ct *review denied* (1970).

The evidence at bar, regardless of acquittal, was closely related in time and method of operation, people involved, automobile involved, use of glue, etc. As

such it was relevant with reference to intent and identity if nothing else. We cannot agree with the Arizona court's reasoning in *Little*. The fact of defendant's acquittal on one charge does not change in any material regard the reasons for holding the evidence admissible. In this regard, McCormick says:

> "* * * [I]t is clear that the other crime, when it is found to be independently relevant and admissible, need not be established beyond a reasonable doubt, either as to its commission or as to defendant's connection therewith, but for the jury to be entitled to consider it there must of course be substantial evidence of these facts, and some courts have used the formula that it must be 'clear and convincing.' And it is believed that before the evidence is admitted at all, this factor of the substantial or unconvincing quality of the proof should be weighed in the balance." (Footnotes omitted.) McCormick, Evidence 447, 451-52, § 190 (hornbook series, 2d ed 1972).

In *State v. McLean*, 255 Or 464, 471, 468 P2d 521 (1970), speaking of the situation where evidence of other crimes is offered against a defendant as substantive evidence, rather than to impeach credibility, the Oregon Supreme Court said:

> "* * * [I]t does not necessarily follow that the defendant in such a case would have had the right to offer as relevant and substantive evidence the fact that he had been pardoned or otherwise exonerated of the crime for which he was then being held in jail and defendant has not cited any such case. Indeed, it may be contended that in such a case the probative weight of such evidence, if any, would be so slight as to fall within the discretion of the trial judge to admit or exclude. *Cf.* McCormick on Evidence, 319-21, § 152, and *Clement v. Cummings*, 212 Or 161, 167, 317 P2d 579 (1957)."

■ As already noted, defendant also contends the

court erred in refusing to permit defendant to prove her acquittal of the other offense. The quotation from *State v. McLean,* supra, although it is dictum as to the precise question raised here, indicates that in Oregon it is discretionary with the trial judge whether evidence of acquittal should be received. Annotation, 86 ALR2d at 1135, supra, and ALR2d Later Case Service list several cases where courts have held to the contrary, that is, they have held that defendants are entitled to show their acquittal. An examination of the listed cases shows that the majority have simply assumed that defendants should be allowed to prove acquittal of the other offenses. One recent case unequivocally holds that it is error justifying reversal to refuse to allow such evidence. *See Womble v. State,* 8 Md App 119, 258 A2d 786 (1969).

We think the question of admissibility of such evidence is best left to the discretion of the trial court, as indicated by *McLean.* This conclusion is borne out by the reasoning of McCormick, quoted supra, where he points out that in the trial of the other offense the burden of proof was beyond a reasonable doubt. The jury need not be held to such a strict standard on particular relevant evidence it considers, as distinguished from the totality of evidence upon which it determines guilt. Further, the fact that a prior jury may have reached a particular decision may become irrelevant because that decision may have been based upon different evidence, or decided on the basis of a different legal standard.[1]

[1] *See also* State v. Polk, 5 Or App 605, 608-09, 485 P2d 1241 (1971).

Under the circumstances of the case at bar, we conclude the trial court acted within its discretion on the challenged rulings.

Affirmed.